# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

---

|  |  |  |
|---|---|---|
| DEEPA SHANBHAG, individually and on behalf of all others similarly situated, | : : : | Index No. 2:11 cv 06965 (FSH) (PS) |
|  | : |  |
| Plaintiff, | : |  |
| v. | : |  |
|  | : |  |
|  | : |  |
| LARSEN & TOUBRO INFOTECH LIMITED, INC., LARSEN & TOUBRO LIMITED | : : : |  |
|  | : |  |
| Defendants. | : |  |

---

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION PURSUANT TO FED. R. CIV. P. 72, FED. R. CIV. P. 12(b)(6), AND FED. R. CIV. P. 56 TO DISMISS <u>CERTAIN CLAIMS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT</u>**

BRYAN CAVE LLP
1290 Avenue of the Americas
New York, New York 10104
(212) 541-2000
*Attorneys for Defendants*

# TABLE OF CONTENTS

<u>Page</u>

TABLE OF AUTHORITIES ........................................................................................................ii

PRELIMINARY STATEMENT ................................................................................................1

STATEMENT OF FACTS ........................................................................................................2

    Procedural Background ........................................................................................................2

    Substantive Facts Pled in Support of the Challenged Claims ............................................5

        (i) Pregnancy Discrimination (Class) ...........................................................................6

        (ii) Sex Discrimination (Class).......................................................................................7

        (iii) Pregnancy Discrimination (Individual)....................................................................8

ARGUMENT ...........................................................................................................................9

POINT I   PLAINTIFF'S CLASS ACTION CLAIMS SHOULD BE DISMISSED........................9

    A.    Plaintiff's Class Action Based On Sex Discrimination Should Be Dismissed............11

    B.    Plaintiff's Class Action Based On Pregnancy Discrimination Should Be Dismissed..................................................................................................................13

POINT II  THE PURPORTED CLASS COULD NOT BE CERTIFIED ........................................14

    A.    The Second Amended Complaint Evidences That Joinder Would Not Be Impractical..............................................................................................................16

    B.    The Second Amended Complaint Evidences  There Is No Commonality .................17

    C.    Plaintiff Could Not Serve As Lead Plaintiff ..................................................................19

POINT III PLAINTIFF'S INDIVIDUAL CLAIM OF PREGNANCY DISCRIMINATION SHOULD BE DISMISSED............................................................................................20

CONCLUSION .......................................................................................................................25

## TABLE OF AUTHORITIES

### CASES

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009)........................................................ 9, 10, 12, 23, 24

*Beck v. Maximus, Inc.*, 457 F.3d 291 (3d Cir. 2006)..................................................................................19

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007) ...........................9, 10, 11, 12, 23, 24

*Bishop v. Cmte. on Prof. Ethics & Conduct of the Iowa State Bar Association*, 686 F.2d 1278
    (8th Cir. 1992)................................................................................................................................19

*Carey v. Federal Exp. Corp.*, No. 10-2155, 2011 WL 4708065 (D.N.J. Oct. 4, 2011) ...............................20

*Carmon v. Norfolk S. Railway Co.*, No. 03-5959, 2005 U.S. Dist. LEXIS 37675
    (E.D. Pa. Dec. 22, 2005) ...............................................................................................................12

*Dellapenna v. Tredyffrin/Easttown School District*, No. 11-1394, 2011 WL 5110226
    (3d Cir. Oct. 28, 2011)............................................................................................................. 21, 24

*Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 102 S. Ct. 2364 (1982).........................................................17

*Geraci v. Moody-Tottrup, International, Inc.*, 82 F.3d 578 (3d Cir. 1996) ................................................20-21

*Geraghty v. Ins. Servs. Office, Inc.*, No. 08-1203, 2009 WL 1025544 (D.N.J. Apr. 16, 2009) ....................21

*Green v. Green Mountain Coffee Roasters, Inc.*, No. 11-2067, 2011 WL 6372617
    (D.N.J. Dec. 20, 2011)....................................................................................................................14

*Hernandez v. Borough of Ft. Lee*, No. 09-1386, 2010 WL 2346646 (D.N.J. June 8, 2010)................. 21, 22

*Logan v. Potter*, No. 06-297, 2007 WL 1652268 (D.N.J. June 6, 2007)................................................ 22, 23

*McCafferty v. Thermo Fisher Scientific*, No. 11-1146, 2011 WL 3443838 (D.N.J. Aug. 5, 2011) ...............10

*McGarrey v. Johnson*, No. 11-1123, 2011 WL 3859741 (D.N.J. Aug. 31, 2011) .........................................23

*Ogunbayo v. Hertz Corp.*, No. 11-4209, 2011 WL 6328222 (D.N.J. Dec. 16, 2011)..................................10

*Ruehl v. Viacom, Inc.*, 500 F.3d 375 (3d Cir. 2007) .....................................................................................18

*Swierkiewicz v. Sorema*, 534 U.S. 506, 122 S. Ct. 992 (2002).......................................................................24

*Terminiello v. New Jersey Motor Vehicle Commission*, No. 11-3359, 2011 WL 6826128
    (D.N.J Dec. 27, 2011).....................................................................................................................10

*Suarez v. Prudential Insurance Co. of America*, No. 11-1796, 2011 WL 6339781
   (D.N.J. Dec. 19, 2011) .............................................................................................10

*Wal-Mart v. Dukes*, 131 S. Ct. 2541 (2011) ..................................................15, 16, 17, 18, 19, 23

## STATUTES

Fed R. Civ. P. 12(b)(6) ...........................................................................................................1

Fed. R. Civ. P. 12(d) .........................................................................................................1, 21

Fed. R. Civ. P. 56 ..............................................................................................................1, 21

Fed. R. Civ. P. 72 ...................................................................................................................1

## PRELIMINARY STATEMENT

This Memorandum of Law is submitted on behalf of Defendant Larsen & Toubro Infotech Limited, Inc. ("Defendant") in support of its Motion for an order: (i) pursuant to Fed. R. Civ. P. 72 to modify an Order issued by Magistrate Judge Schwartz entered on February 14, 2012 (the "Order"); (ii) pursuant to Fed R. Civ. P. 12(b)(6) dismissing certain claims contained in the Second Amended Complaint filed by Plaintiff on February 21, 2012 or, in the alternative, converting this motion to one for partial summary judgment pursuant to Fed. R. Civ. P. 12(d) and, upon conversion, granting Defendant summary judgment on certain claims pursuant to Fed. R. Civ. P. 56; and (iii) for any other, further, or different relief as the Court deems just and appropriate.

In the Order, Magistrate Judge Shwartz dismissed all proposed class action claims Plaintiff sought to include in the Second Amended Complaint under federal law, but allowed Plaintiff to attempt to plead class action claims under the New Jersey Law Against Discrimination ("NJLAD"). The Second Amended Complaint filed by Plaintiff, which is different from the Complaint attached in support of Plaintiff's Motion to Amend the Complaint, purports to assert class claims under the NJLAD.  However, Plaintiff sets forth no factual allegations on behalf of the purported class sufficient to plead a prima facie claim of employment discrimination or to show that class claims are plausible.  Plaintiff's class action allegations are conclusory and devoid of any factual specificity whatsoever.  Therefore, all of Plaintiff's class action claims should be dismissed for failing to meet the pleading standard applicable to those claims.  In addition, the Second Amended Complaint demonstrates that the class action claims purported to be brought by Plaintiff could not be certified as a matter of law.

Plaintiff's individual claims under NJLAD and Title VII for wrongful termination based on pregnancy discrimination should also be dismissed or, in the alternative, Defendant should be

granted summary judgment on these claims.[1]  The undisputed evidence establishes that Defendant was not aware of Plaintiff's pregnancy on the date it made the decision to terminate her employment and the Second Amended Complaint sets forth no allegations to the contrary.  As Plaintiff has not pled that Defendant was aware of her pregnancy at the time it made the decision to terminate her employment, which the Third Circuit has held is a requirement to set forth a prima facie case of pregnancy discrimination, Plaintiff's individual pregnancy discrimination claims under Title VII and NJLAD should be dismissed.  As Plaintiff's individual claim for pregnancy discrimination fails, the class claim under NJLAD attempted to be brought under that theory must fall as well.

## STATEMENT OF FACTS

### Procedural Background

This action was commenced by the filing of a Complaint on November 29, 2011 against Defendant Larsen & Toubro Infotech Limited, LLC, an entity that was not Plaintiff's employer and has no connection to the alleged facts underlying Plaintiff's claims.  (Strianese Decl, Ex. 1.)  The original Complaint, which consisted of ten sentences of factual allegations, brought only individual claims alleging wrongful termination resulting from alleged pregnancy discrimination.  (*Id.*)

Following service of the Complaint, on or about December 9, 2011 and December 14, 2011, Defendant's counsel contacted Plaintiff's counsel to advise her that the action had been commenced against the incorrect entity (Larsen & Toubro Infotech Limited, LLC).  (Strianese Decl, ¶ 2.)  Defendant's counsel provided Plaintiff's counsel with the name of the correct employing entity (Larsen & Toubro Infotech Limited, Inc.) and agreed to accept service of process on its behalf.  (*Id.*)  Plaintiff's counsel agreed to amend the Complaint to add the correct entity.  (*Id.* ¶ 3.)  During these discussions, Plaintiff's counsel did not mention anything about class action claims or that Plaintiff would be seeking to further amend the Complaint.  (*Id.*)  Plaintiff filed the First Amended

---

[1]       This issue was not considered by Judge Shwartz because it had been fully briefed before Judge Hochberg.

Complaint on December 15, 2011.  (Strianese Decl., Ex. 2.)  Other than adding Defendant Larsen &
Toubro Infotech Limited, Inc. as a Defendant, the First Amended Complaint was identical to the
Complaint.

On January 3, 2012, *one day* before Defendant's response to the First Amended Complaint
was due, Plaintiff ECF filed, without Court approval, a Second Amended Complaint in
contravention of Rule 15 of the Federal Rules of Civil Procedure ("Rule 15"), seeking to turn this
case into a class action.  (Strianese Decl, Ex. 3.)  The next day, on January 4, 2012, Defendant Larsen
& Toubro Infotech Limited, Inc. ECF filed a Motion to Dismiss the First Amended Complaint or,
in the alternative, for Summary Judgment.

In a letter enclosing courtesy copies of Defendant's Motion to Dismiss the First Amended
Complaint, Defendant's counsel alerted Judge Hochberg to the fact that the Second Amended
Complaint had been improperly filed under Rule 15.  (Strianese Decl. ¶ 4.)  Plaintiff responded with
a letter requesting permission to file the Second Amended Complaint and to deem it served on all
Defendants, including Larsen & Toubro Limited, a third-party added to the Second Amended
Complaint, which had not been served with the Complaint or First Amended Complaint.  (*Id.* ¶ 5.)

By Order dated January 10, 2012, Judge Hochberg struck the Second Amended Complaint
as improperly filed in contravention of Rule 15, directed Plaintiff to respond to Defendant's Motion
to Dismiss the First Amended Complaint by January 23, 2012, and further directed Plaintiff that, if
she desired to further amend the Complaint, to file a motion seeking leave to do so.  (Strianese Decl,
Ex. 4.)   Plaintiff did not respond to Defendant's Motion to Dismiss by January 23, 2012 as ordered.

On January 13, 2012, Plaintiff filed a Motion for leave to Amend the Complaint seeking to
add certain claims under Title VII and the NJLAD.  On January 23, 2012, Defendant filed an
Opposition to that Motion.  In the Opposition, Defendant noted that the issues concerning whether
Plaintiff had adequately pled an individual claim for pregnancy discrimination and whether

Defendant was entitled to summary judgment on that claim had been fully briefed before Judge

Hochberg in the Motion to Dismiss the First Amended Complaint or, in the alternative, for

Summary Judgment.  On February 6, 2012, Plaintiff filed her Reply.

On February 11, 2012, Magistrate Judge Shwartz entered the Order denying Plaintiff's

Motion for leave to file a Second Amended Complaint with respect to certain claims and granting

the Motion with respect to other claims.  (Strianese Decl, Ex. 5.)  Specifically, the Order stated that

Plaintiff was permitted to add:

> 1) an individual claim of intentional sex discrimination under Title VII of the
> Civil Rights Act of 1964, 42 U.S.C §§ 2000(e) et seq.;
>
> 2) individual and class claims of sex discrimination under the New Jersey
> Law Against Discrimination, N.J.S.A. 10:5-12(a);
>
> 3) a class claim of pregnancy discrimination under the New Jersey Law
> Against Discrimination, N.J.S.A. 10:5-12(a)

Leave to file a Second Amended Complaint adding the following claims was denied:

> 1) class claims for pregnancy, sex and hostile work environment as well as
> the individual hostile work environment claims under Title VII of the Civil Rights
> Act or 1964, 42. U.S.C. §2000e et seq.;
>
> 2) the separate count for equitable relief; and
>
> 3) claims for breach of contract as pleaded;
>
> 4) it was further Ordered that the motion for leave to add claims under 42
> U.S.C. § 1981 was deemed withdrawn.

As the issue had been fully submitted to Judge Hochberg but was not before Magistrate

Judge Shwartz, the Order did not address whether Plaintiff had adequately pled an individual claim

of wrongful termination based on pregnancy and, if so, whether Defendant is entitled to summary judgment on that claim.

While the Order does not provide a rationale for the decision, it seems reasonably clear based on the oral argument held before Judge Shwartz on February 8, 2012, and from certain documents Judge Shwartz ordered be submitted, that the Court determined that Plaintiff had failed to exhaust her administrative remedies with respect to the federal claims (other than 42 U.S.C. § 1981)[2] that she was denied leave to include in the Second Amended Complaint. Following entry of the Order, on February 14, 2012, Judge Hochberg denied Defendant's Motion to Dismiss the First Amended Complaint as moot. (Docket No. 39). On February 21, 2012, Plaintiff filed her Second Amended Complaint ("SAC"). (Striniese Decl, Ex. 7.) Notably, the Second Amended Complaint filed by Plaintiff is different from the proposed Second Amended Complaint she submitted to Magistrate Judge Shwartz in support of her Motion for Leave to File a Second Amended Complaint. (*Compare* Ex. 6 *with* Ex. 3.)

Through this Motion, Defendant seeks a modification of the Order to the extent that it permitted Plaintiff to plead a class claim of sex and pregnancy discrimination under the NJLAD and also seeks dismissal of those claims from this action. This Motion also seeks dismissal of Plaintiff's individual claims for wrongful termination based on pregnancy under all statutes and, by extension, a dismissal of her class pregnancy discrimination claim under the NJLAD.

---

[2]      Defendant opposed the addition of the claim pursuant to 42 U.S.C. § 1981 on the ground that Plaintiff made no allegations of race or national origin discrimination.

**Substantive Facts Pled in Support of the Challenged Claims**

As defined in the Second Amended Complaint, the proposed class consists of "all past, present, and future female employees of L&T infotech and/or L&T[3] in the United States."  In support of this broad and sweeping class action, only the following substantive allegations are pled.

**(i) Pregnancy Discrimination (Class)**

The substantive (non-conclusory) facts pled in support of the class claim of pregnancy discrimination under the NJLAD are:

1.  When [a] woman returned from maternity leave she was given less work, and Ms. Shanbhag was told that she was "unfit to carry out certain tasks now that she's had a baby."  (SAC ¶ 33.)

2.  Defendants' head of human resources, Krishnakumar Hariharan, unequivocally told a woman employee when she returned from maternity leave that she had to choose between "the baby and her career."  (SAC ¶ 36.)

3.  Defendants refused to allow women to leave their workstations to pump breast milk.  (SAC ¶ 37.)

4. One woman returned from maternity leave of three months, only to find that she had been demoted and was reporting to the man who used to be her peer.  (SAC ¶ 38.)

Thus, the Complaint alleges that *over a period of years*, Ms. Shanbhag and at most *3 other women*,[4] out of "about 1500 class members" have allegations relating to pregnancy discrimination.  Only *one* other woman is alleged to have been subjected to an adverse employment action (a demotion) as a

---

[3]     The Second Amended Complaint also adds a new entity, Larsen & Tourbo Limited (L&T), which is Defendant's parent company.  This entity was not Plaintiff's employer and has no connection to facts alleged here.  L&T has never been served with process in this action.  While we do not currently represent L&T in this matter, we anticipate that, if L&T is served, we will appear on its behalf and that it will also file a motion to dismiss.

[4]     It is unclear if the allegations regarding the "women" referenced in paragraphs 33, 36, and 38 all concern the same woman, two women, or at most three women.

result of her pregnancy.  There are no *factual* allegations of a company-wide practice or policy of mistreating pregnant women.

**(ii) <u>Sex Discrimination (Class)</u>**

The substantive (non-conclusory) facts pled in support of the class claim of sex discrimination under the NJLAD are:

1.  Defendants openly declared their hostility to women employees with statements such as describing a woman in management as having obtained that position "because the locals made her sit on their head."  (SAC ¶ 31.)

2.  On another occasion, a supervisor told Ms. Shanbhag that a female employee was being transferred because of her "dreadful appearance" and inability to communicate with men. (SAC ¶ 32.)

3.  Another female, who complained about sexual harassment from her supervisor was told not to come to work too early or too late and to "avoid being alone with" her harasser. Defendants' Human Resources personnel also told that woman employee to avoid "being alone at your workstation."  (SAC ¶ 33.)

Here again, the Complaint alleges that *over a period of years*, Ms. Shanbhag and at most *two other women*,[5] out of "about 1500 class members" have allegations relating to sex discrimination.  No other woman is alleged to have been subjected to an adverse employment action as a result of her sex. There are no factual allegations of a company wide practice or policy of mistreating women because of their sex.

---

[5]      Once again it is unclear if the allegations regarding the "women" referenced in paragraphs 31, 32, and 33 concern the same woman or at most two women.

### (iii) <u>Pregnancy Discrimination (Individual)</u>

The substantive (non-conclusory) facts pled in support of the individual claim of pregnancy discrimination are:

1. On March 3, 2011, Ms. Shanbhag informed Defendants, through their Human Resources Department, and through her immediate supervisor, that she was pregnant. (SAC ¶ 27.)

2. The very next day, March 4, 2011, Defendants terminated Ms. Shanbhag's employment.  (SAC ¶ 28.)

3. Thus, Ms. Shanbhag was terminated thirty-eight (38) days after Defendants [changed her status from contractor to employee], and just one day after she informed them of her pregnancy.  (SAC ¶ 29.)

These facts are insufficient to make out a prima facie case of wrongful termination based on pregnancy discrimination.  In addition, the undisputed (and indisputable) evidence establishes that, by March 3, 2011, the first date Plaintiff alleges that she told anyone working for Defendant that she was pregnant, Defendant had already made the decision to terminate Plaintiff's employment.  This fact is documented in emails exchanged between company employees and the dates of those emails, which have been forensically documented as reflected in the attached Affidavit of Sanjay Bhoir (Strianese Decl, Ex. 7, ¶¶ 3-4 and Exhs. A & B.), a member of Defendant's Information Technology team, are February 25, 2011 and February 28, 2011, *prior* to the date Plaintiff alleges that she informed the company that she was pregnant.

On February 25, 2011, Sanjay Mali, Engagement Manager - Program Management, for the Company, sent an email to human resources professional Elaine Patrao, stating:

> To give you some background, we hired [Plaintiff], as she showed potential, to come up as a good BA in SFS domain: At the time of joining, she had only Private Banking experience: However, after about 5 months, things have not progressed per our expectations: We have provided [Plaintiff] ample opportunities and also regular feedback for improvements.  Having come this far, I am unwilling to continue with her as Bus. Analyst, for the kind of output which we are getting: today, we expected

her to be an acknowledged [Subject Matter Expert] in at least 2 Century apps/domain, but this has not happened.  Instead, we are required to do lots of micro management for her activities and also keep feeding her more than the expected knowledge and information to be productive and useful to Century.

*Request that you help us exit her from Century and L&T Infotech* – I have not checked with other Account Managers on whether they can use her for any open positions – at the same time, I do not want to pass Century problems to other Citi projects. Please let me know, the next steps.

(Strianese Decl., Ex. 7, Exh. A (emphasis added).)

By February 28, 2011, the termination decision was final and the termination paperwork was being processed.  On that date, Human Resources professional Elaine Patrao wrote to another human resources professional Farida Nallaseth, stating:

We require a termination letter (signed and scanned) for Deepa Shanbag, ps. no. 724693. She is not enrolled in our health plan so the advice on cobra can be omitted.

(Strianese Decl, Ex. 7, Exh B (emphasis added).)

This evidence establishes that the decision to terminate Plaintiff's employment was made prior to the date Plaintiff informed the Company that she was pregnant.  Accordingly, Defendant could not have made the termination decision for discriminatory reasons.

## ARGUMENT

### POINT I

#### PLAINTIFF'S CLASS ACTION CLAIMS SHOULD BE DISMISSED

To survive a motion to dismiss, a complaint must contain sufficient factual allegations, accepted as true, "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009), citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1955 (2007).   "A plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 545.  While the plausibility standard is not akin to a probability requirement, a plaintiff must plead more than the "sheer possibility that a defendant has

acted unlawfully." *Iqbal*, 129 S. Ct. at 1949.  "'[N]aked assertion[s]' devoid of 'further factual enhancement'" do not suffice.[6]  *Id.*

In *Twombly*, the Supreme Court made clear that class action claims are subject to the same pleading standard as individual claims.  *Twombly*, 550 U.S. at 548.  The Court also made clear that conclusory allegations such as that the Defendant engaged in a "conspiracy" or "agreement" or "parallel conduct" are insufficient to survive a motion to dismiss.  *Id.* at 554-57; *see also Terminiello v. New Jersey Motor Vehicle Comm'n*, No. 11-3359, 2011 WL 6826128 (D.N.J Dec. 27, 2011).  Instead, what is required is "enough *factual matter* (taken as true) to suggest that" the pleader is plausibly entitled to relief on the asserted claims.  *Twombly*, 550 U.S. at 556 (emphasis supplied).

As the *Twombly* Court noted, courts should be particularly careful to weed out insufficiently pled claims where expensive discovery is potentially implicated.  The Court stated: "a district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed."  *Id.* at 558.  Unless a plaintiff shows that the class action claim is plausible, it would result in a plaintiff with "a largely groundless claim" being permitted to "take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of settlement value."[7]  *Id.* at 558.

---

[6] Claims brought pursuant to the NJLAD are analyzed under the pleading requirements set down in *Iqbal* and *Twombly*. *Suarez v. Prudential Ins. Co. of America*, No. 11-1796, 2011 WL 6339781 (D.N.J. Dec. 19, 2011); *Ogunbayo v. Hertz Corp.*, No. 11-4209, 2011 WL 6328222 (D.N.J. Dec. 16, 2011); *McCafferty v. Thermo Fisher Scientific*, No. 11-1146, 2011 WL 3443838 (D.N.J. Aug. 5, 2011).

[7]    Already, there is evidence that the Plaintiff's incredibly weak class action allegations are designed to and will in fact subject the Defendant to extremely expensive discovery if they are permitted to proceed.  The *same day* the Order was entered, counsel for Plaintiff served on Defendant a 12 page demand for the preservation of documents going back *over 12 years*.  The demand includes: e-mail, voicemail, instant messaging, word processed documents, excel documents, accounting documents, PDF, TIFF, JPG, and GIF images, sound recordings, video, databases, outlook, calendars, internet files and cookies, power point, server activity logs, project management application data, all digital and analog files, computer aided design and drawing files, back up tapes, PDA/Blackberry data, and all internet and web-browser generated history files and cookies. (Strianese Decl., Ex. 8.)  Plaintiff seeks preservation of *over 12 years* of this information even though it was undisputed that she was employed by Defendant for *less than five months*.

A.     <u>**Plaintiff's Class Action Based On Sex Discrimination Should Be Dismissed**</u>

In the Second Amended Complaint, Plaintiff attempts to bring a class action under the

NJLAD "on behalf of a class of all past, present, and future female employees of L&T Infotech"

who were "fired or otherwise discriminated against." (SAC ¶¶ 9-10.) While Plaintiff does not

explain what she means by "otherwise discriminated against," she states in conclusory fashion that

there was an alleged "hostile work environment" that impacted women (SAC ¶ 11(b)) and that

women were somehow treated differently with respect to "compensation or other terms or

conditions of employment." (SAC ¶ 11(c).) By stating that women were "fired or otherwise

discriminated against," that there was a "hostile work environment," and that women were

discriminated against with respect to "compensation," Plaintiff is making precisely the type of

conclusory allegations the *Twombly* Court stated are insufficient. *Twombly*, 550 U.S. at 554-57

(allegations that Defendant engaged in a "conspiracy" or "agreement" or "parallel conduct" are

insufficient to survive a motion to dismiss).

While Plaintiff purports to bring a class action on behalf of "past" employees, Plaintiff

alleges no facts at all concerning Defendant's employment practices, other employees, or anything

else for that matter prior to October 14, 2010, the date Plaintiff commenced working for Defendant.

As a result, her attempt to bring a class action on behalf of "past" employees who ceased

employment with Defendant prior to that date cannot survive.[8]

With respect to current employees of Defendant, Plaintiff alleges no facts showing a pattern,

practice, or policy that discriminated against women as a class. Plaintiff fails to allege that there was

a single other woman employed by Defendant who was terminated for discriminatory reasons. In

fact, she fails to allege that there was a single other woman who was terminated at all. Plaintiff also

fails to allege anything about the "compensation" received by women (including herself) as

---

[8]     Clearly, a class action brought on behalf of "future" employees of Defendant also cannot be maintained.

compared to men.  Plaintiff allegations of sex discrimination consist of sporadic comments made

over a period of *years* to, at most, three woman other than Plaintiff, representing .002% of the 1500

women supposedly encompassed in this class action complaint.  Plaintiff has not pled "enough

*factual matter* (taken as true) to suggest that" a class action claim on behalf of *all* Defendant's female

employees is plausible.  *Id*. at 556.

Similarly, a hostile work environment claim brought on behalf of all "past, present, and

future" female employees of defendants, who worked in different departments, on different

projects, for different managers, in different locations across many different states, cannot not be

maintained.  A hostile work environment claim is inherently individual because whether a working

environment is hostile depends upon the facts relative to that environment.  *See, e.g.*, *Carmon v.

Norfolk S. Ry. Co*., No. 03-5959, 2005 U.S. Dist. LEXIS 37675, at *25 (E.D. Pa. Dec. 22, 2005) (In a

hostile work environment claim, allegations and evidence concerning the circumstances of *the

complainant's* employment are determinative.).  Clearly, "all past, present, and future" female

employees of defendants did not all have a similar enough environment for such a wide sweeping

class to proceed, and Plaintiff sets forth no factual allegations in the Second Amended Complaint to

show that such a claim would be plausible.  Even if all female employees' environments were similar,

which they were not, the manner in which those environments were perceived would be different.

What one employee finds hostile, another might not.  What is sufficient to alter the terms and

conditions for one might not be sufficient to alter the terms and conditions for another (much less

*all*).  The sweeping class action hostile work environment claim is not plausible, defies common

sense, and cannot be maintained.  *Iqbal*, 129 S. Ct. at 1950 ("Determining whether a complaint states

a plausible claim for relief will…be a context-specific task that requires the reviewing court to draw

on its judicial experience and common sense.").

Plaintiff's conclusory class allegations of sex discrimination, devoid of any factual detail whatsoever, do not meet the applicable pleading requirements. Accordingly, her class allegations based on sex discrimination should be dismissed.

**B.    Plaintiff's Class Action Based On Pregnancy Discrimination Should Be Dismissed**

Plaintiff's attempt to bring a class action under the NJLAD "on behalf of a class of all past, present, and future female employees of L&T Infotech" who were "fired or otherwise discriminated against" on the basis of pregnancy should also be dismissed. Plaintiff makes no allegations concerning the number of pregnant women who worked for Defendant. However, at most, the Second Amended Complaint, which purports to span *years*, references *two* women besides Plaintiff who were pregnant and allegedly suffered discrimination. Clearly these allegations are not sufficient to state a plausible class action claim for pregnancy discrimination "on behalf of a class of all past, present, and future female employees of L&T Infotech."

Plaintiff does not allege any facts showing a pattern, practice, or policy that discriminated against pregnant women as a class. While she states, again in conclusory fashion, that "Defendant had a pattern and practice of demoting women upon their return from maternity leave" her factual support for this conclusion is that "*One* woman returned from maternity leave of three months, only to find that she had been demoted and was reporting to the man who used to be her peer." (SAC ¶ 38 (emphasis supplied).) An allegation concerning an employment action taken by Defendant in connection with *one* woman's employment, is insufficient factual matter to plausibly state a pregnancy discrimination claim on "behalf of a class of all past, present, and future female employees of L&T Infotech."

Plaintiff's allegation that "Defendants refused to allow women to leave their workstations to pump breast milk" is similarly insufficient. First, even if this fact were true, which it is not, it would have had no impact on Plaintiff because, according to the Second Amended Complaint, she was still

pregnant when she was terminated.  Second, this allegation does not provide factual support for a class action based on the "termination" of, or "compensation" provided to, pregnant women, which is how this class action is framed.[9]  Finally, given the other weaknesses in Plaintiff's class action pregnancy discrimination claim this allegation is insufficient to set forth grounds for relief that are plausible under the applicable pleading standard. As Plaintiff has not provided enough factual matter to adequately support her class action claim based on pregnancy discrimination, this claim should be dismissed.

## POINT II

## THE PURPORTED CLASS COULD NOT BE CERTIFIED

Prior to a request for class certification, a Court may dismiss or strike class allegations from a complaint at the motion to dismiss stage "in those rare cases where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met."  *Green v. Green Mountain Coffee Roasters, Inc.*, No. 11-2067, 2011 WL 6372617, at *7 (D.N.J. Dec. 20, 2011), citing *Clark v. McDonald's Corp.*, 213 F.R.D. 198, 205, n.3 (D.N.J. 2003) and *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160, 102 S. Ct. 2364 (1982).  Here, it is clear from the Complaint that these claims could not be certified as a class action.

At the heart of every class certification determination lies Rule 23 of the Federal Rules of Civil Procedure, which sets forth certain requirements for certification.  The requirements are:

(1)  the class is so numerous that joinder of all members is impracticable,

(2)  there are questions of law or fact common to the class,

(3)  the claims or defenses of the representatives are typical of the claims or defenses of the class, and

(4)  the representative parties will fairly and adequately protect the interests of the class.

---

[9]        A "hostile work environment" pregnancy discrimination claim fails for the reasons set forth in Point I, A, *supra*.

Based solely on the allegations of the Second Amended Complaint it is clear that, as a matter of law, certification could not be granted here.

Recently, in *Wal-Mart v. Dukes*, 131 S. Ct. 2541, 2549 (2011), the Supreme Court denied certification to a plaintiff class consisting of "[a]ll women employed at any Wal-Mart domestic retail store at any time since December 26, 1998, who have been or may be subjected to Wal-Mart's challenged pay and management track promotions policies and practices." The *Wal-Mart* plaintiffs unsuccessfully sought to challenge, on a class basis, specific, allegedly identifiable, "policies and practices." Here, the allegations contained in Second Amended Complaint cannot, as a matter of law, result in certification because they are far weaker and less specific than the allegations deemed insufficient in *Wal-Mart*.

The United States Supreme Court in *Wal-mart* stated: "Importantly for our purposes, [the plaintiffs'] claim that the discrimination to which they have been subjected is common to *all* Wal-mart's female employees." *Id.* at 2548 (emphasis in original). The same is true here. Also in *Wal-mart*, as here, the plaintiffs did not allege that Defendant had "any express corporate policy" that was discriminatory. *Id.* at 2548. But the *Wal-mart* plaintiffs at least alleged that "their local managers' discretion over pay and promotions is exercised disproportionately in favor of men." *Id.* That type of allegation, describing *how* the class discrimination against all of Defendant's female employees is alleged to have occurred, is absent here. Unlike the plaintiffs in *Wal-mart*, this Plaintiff does not plead facts to show the existence of a "uniform corporate culture" or a "practice" or any other facts explaining how the alleged class discrimination occurred with respect to *all* female employees. *Id.*

Significantly, the *Wal-mart* Court noted: "Quite obviously, the mere claim by employees of the same company that they have suffered a Title VII injury, or even a disparate-impact Title VII injury, gives no cause to believe that all of their claims can be productively litigated at once." *Id.* at 2551. Rather, their claims must depend upon a "common contention – for example, the assertion of

15

discriminatory bias on the part of the same supervisor."  Moreover, that common contention "must be of such a nature that it is capable of classwide resolution – which means that the determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Id.*

Here, Plaintiff sets forth nothing more in the Second Amended Complaint than that she and other female employees suffered a Title VII and NJLAD injury.  She sets forth no facts to show, or even from which it could be inferred, that there is a common contention that the claimed class members suffered an injury in the same way, *e.g.*, from the same practice or policy.  In other words, "without some glue holding the alleged *reasons* for all" of the "[Defendant's] decisions together, it will be impossible to say that examination of all the class members' claims for relief will produce a common answer to the crucial question…."  *Id.* at 2552 (emphasis in original).  Without this "glue," Plaintiff's complaint is defective.

###     A.     The Second Amended Complaint Evidences That Joinder Would Not Be Impractical

While the Second Amended Complaint purports to assert claims on behalf of all "past, present, and future" female employees of Defendant, there no more than six[10] female employees mentioned in the Second Amended Complaint in total.  It would not be impractical to join a handful of additional plaintiffs to this action if the other employees specifically mentioned in the Second Amended Complaint have claims and wish to assert them.  In fact, joining a few other plaintiffs would be a far more practical choice than the far-reaching, overly broad, class action claims contained in the Second Amended Complaint.

---

[10]     We suspect that there are even fewer than six employees mentioned in the Complaint and that Plaintiff has repeatedly referred to the same one or two employees as "a woman," rather than referring to them by name, to try to create the impression that the Second Amended Complaint sets forth allegations concerning more women than it actually references.  In any event, the maximum number of females mentioned is only, at most, six.

**B.    The Second Amended Complaint Evidences
There Is No Commonality**

In order to meet the commonality requirement, Plaintiff will be required to show that there are "questions of law or fact common to the class" and that her claims are "typical of the claims" of the purported class.  In *Gen. Tel. Co. of the Southwest v. Falcon*, the Supreme Court observed that these concepts "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  457 U.S. 147, 157 n.13 (1982).

In identifying whether the "crux of th[e] case" is sufficiently interrelated to meet the commonality requirement of Rule 23(a)(2), the *Wal-Mart* Court noted: "[t]hat language is easy to misread, since '[a]ny competently crafted class complaint literally raises common "questions."'"  131 S. Ct. at 2550-51.  "For example: Do all of us plaintiffs indeed work for Wal-Mart?  Do our managers have discretion over pay?  Is that an unlawful employment practice?  What remedies should we get?  Reciting these questions is not sufficient to obtain class certification."  *Id.* at 2551.  These are precisely the "questions" raised by the Second Amended Complaint here.  (SAC ¶ 11.)

The Court also distinguished between demonstrating that class members "have suffered the same injury," as the law requires for certification, and showing "merely that they have all suffered a violation of the same provision of law."  *Id.* (quoting *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 157 (1982)).  The Second Amended Complaint does not even come close to alleging that the class members have "suffered the same injury," and contains far less in the way of commonality allegations than those deemed insufficient in *Wal-Mart*.  As pled, the Second Amended Complaint purports to bring a class action on behalf of all "past, present, and future" female employees of two separate entity defendants, located on two different continents, each of which maintain numerous locations across vast distances, who were allegedly subjected to discrimination with respect to

17

"termination," "compensation," and a "hostile work environment." However, the Second Amended Complaint does not even identify a "policy" or "practice" allegedly adopted or undertaken by Defendants.   Rather, it simply alleges that "defendants engaged in discrimination" against "all past, present, and future" female employees, without providing any factual detail about how the class-wide discrimination is alleged to have occurred and without any factual allegations to support commonality.  These allegations cannot serve as the basis for class certification as a matter of law.

In addition, the allegations in the Second Amended Complaint establish that Plaintiff's claims would not be "typical" of the purported class.  Plaintiff worked on one project, in one location, under one manager, for one of the defendants, for a total period of approximately five months.  Her claims would not possibly be "typical" of all "past, present, and future" female employees of two separate entities, one of which is located in India and was never Plaintiff's employer.

The Second Amended Complaint itself establishes that the commonality required by the U.S. Supreme Court in *Wal-Mart* cannot be shown here as a matter of law.  As the *Wal-Mart* court stated, class certification must be denied where the purported class members "held a multitude of different jobs, at different levels of Wal-Mart's hierarchy, for variable lengths of time, in 3,400 stores, sprinkled across 50 states, with a kaleidoscope of supervisors (male and female) . . . . They have little in common but their sex and this lawsuit."  *Id.* at 2557 (quoting *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 652 (9th Cir. 2010) (dissenting opinion)).  *See also Ruehl v. Viacom, Inc.*, 500 F.3d 375, 386 (3d Cir. 2007) (noting decertification of class where plaintiffs were not "similarly situated" because "[t]he members of the proposed class come from different departments, groups, organizations, sub-organizations, units and local offices within the…organization,…perform[ing] different jobs at different geographic locations and [being] subject to different job actions concerning reductions in work force which occurred at various times as a result of various decisions by different supervisors")

(quoting *Lusardi v. Xerox Corp.*, 122 F.R.D. 463, 465 (D.N.J. 1988)).  Similar to the facts in *Wal-Mart*, the Second Amended Complaint purports to assert claims on behalf all "past, present, and future" female employees of two separate entity defendants, who hold a multitude of different jobs, at different levels of the two separate entity defendants hierarchies, for variable lengths of time, in a multitude of locations, sprinkled across two countries, with a kaleidoscope of supervisors (male and female).  Accordingly, commonality cannot be shown as a matter of law.

### C.  Plaintiff Could Not Serve As Lead Plaintiff

Rule 23(a)(4) requires that named representatives adequately represent and protect the interests of all class members. "The adequacy of the representation issue is now of critical importance in all class actions and the court is under an obligation to pay careful attention to the Rule 23(a)(4) prerequisite in every case." *Bishop v. Cmte. on Prof. Ethics & Conduct of the Iowa State Bar Ass'n*, 686 F.2d 1278, 1288 (8th Cir. 1992), quoting *Vervaecke v. Cheiles, Heider & Co.*, 578 F.2d 713, 719 (8th Cir. 1978); *see also Beck v. Maximus, Inc.*, 457 F.3d 291, 296 n.2 (3d Cir. 2006).

Plaintiff would be an inappropriate lead Plaintiff for a class whose allegations allegedly span *years* because she only spent approximately five months working for Defendant, three of which were spent working in a contract position.  (SAC ¶¶ 23-26, 29.)  Moreover, Plaintiff fails to plead any facts showing that her "compensation" was in any way impacted by the alleged discriminatory practices, despite the fact that she purports to make such a claim on behalf of the class.  (SAC ¶ 11(c).)  *Wal-Mart v. Dukes*, 131 S. Ct. at 2550 (the class claims are limited "to those fairly encompassed by the named plaintiff's claims").  Plaintiff is also an inappropriate lead Plaintiff because, as demonstrated in Point III, *infra*, Plaintiff cannot make out a prima facie case with respect to her individual claim of pregnancy discrimination or, in the alternative, Defendant is entitled to summary judgment on that claim.  Accordingly, Plaintiff is not an appropriate lead Plaintiff for sex or pregnancy discrimination class claims.

19

**POINT III**

**PLAINTIFF'S INDIVIDUAL CLAIM OF PREGNANCY DISCRIMINATION
SHOULD BE DISMISSED**

Plaintiff has not alleged any fact that would constitute direct evidence of discrimination;

therefore, a burden shifting analysis applies to Plaintiff's claims. *Carey v. Federal Exp. Corp.*, No. 10-

2155 (FSH)(PS), 2011 WL 4708065, at *2 (D.N.J. Oct. 4, 2011) (Hochberg, J.), citing *McDonnell*

*Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973). Under the burden shifting method, a

plaintiff must first establish a prima facie case of discrimination. *Id.*

To establish a prima facie case of discrimination under the federal and state laws at issue

here, a plaintiff must show that she: (i) is a member of a protected class; (ii) was qualified for the

position; (iii) suffered an adverse employment action; and (iv) was discharged "under conditions that

give rise to an inference of unlawful discrimination." *Geraci v. Moody-Tottrup, Int'l, Inc.*, 82 F.3d 578,

580 (3d Cir. 1996), citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S. Ct. 1089,

1093 (1981).

Though the traditional prima facie elements make no reference to an employer's knowledge

of a plaintiff's status in a protected category, the Third Circuit has explicitly held that such

knowledge is a critical part of a prima facie case. In *Geraci*, a pregnancy discrimination case, the

Court stated:

> The traditional *McDonnell Douglas-Burdine* presumption quite properly makes no
> reference to the employer's knowledge of membership in a protected class because,
> in the vast majority of discrimination cases, the plaintiff's membership is either
> patent (race or gender), or is documented on the employee's personnel record (age).
> This case, however, is different. We cannot presume that an employer most likely
> practiced unlawful discrimination when it did not know that the plaintiff even
> belonged to the protected class. *The employer's knowledge, in this class of cases, is a critical*
> *element of the plaintiff's prima facie case.* Indeed, it is counter-intuitive to infer that the
> employer discriminated on the basis of a condition of which it was wholly ignorant,
> and in this situation the bare *McDonnell Douglas* presumption no longer makes sense.
>
> In other cases involving personal attributes not obvious to the employer, courts have
> regularly held that the plaintiff cannot make out a prima facie case of discrimination

20

unless he or she proves that the employer knew about the plaintiff's particular personal characteristic…. Likewise, disabilities are often unknown to the employer, and, because of that, the plaintiff must demonstrate that the defendant employer knew of the disability to state a prima facie case of unlawful discharge.

Pregnancy, of course, is different in that its obviousness varies, both temporally and as between different affected individuals. It is difficult to imagine than an employer would not be aware that an employee is in the later stages of her pregnancy, at least if the employer sees the employee….If the pregnancy is not apparent and the employee has not disclosed it to her employer, she must allege knowledge and present, as part of her prima facie case, evidence from which a rational jury could infer that the employer knew that she was pregnant.

*Geraci*, 82 F.3d at 581 (emphasis added).

In the event the Court exercises its discretion to convert this motion into one for summary judgment under Fed. R. Civ. P. 12(d)[11] then, pursuant to Fed. R. Civ. P. 56, a party is entitled to summary judgment if it "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *Dellapenna v. Tredyffrin/Easttown School Dist.*, No. 11-1394, 2011 WL 5110226, at *3 (3d Cir. Oct. 28, 2011). To defeat summary judgment, Plaintiff must show something more than "the mere existence of a scintilla of evidence" for the elements of her prima facie case. *Id.*; *see also Hernandez v. Borough of Ft. Lee*, No. 09-1386 (FSH)(PS), No. 09-1386, 2010 WL 2346646, at *3 (D.N.J. June 8, 2010) (Hochberg, J.) ("[t]he nonmoving party 'must do more than simply show that there is some metaphysical doubt as to material facts.'"). Inferences based on "speculation or conjecture" do not create a material issue of fact in dispute. *Dellapenna*, 2011 WL 5110226 at *3. "[S]ummary judgment may be granted if the nonmoving party's 'evidence is merely colorable or is not significantly probative.'" *Hernandez*, 2010 WL 2346646 at *3, citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

---

[11]     *See Geraghty v. Ins. Servs. Office, Inc.*, No. 08-1203 (FSH), 2009 WL 1025544 *3, n.5 (D.N.J. Apr. 16, 2009) (Hochberg, J).

In the Second Amended Complaint, Plaintiff does not allege that her pregnancy was obvious. She does, however, allege the precise date that she first informed Defendant she was pregnant: March 3, 2011. (SAC ¶ 27.) The undisputed (and indisputable) evidence establishes that, by that date, the Defendant had already made the decision to terminate Plaintiff's employment. This fact is documented in emails exchanged between company employees and the dates of those emails, which have been forensically documented as reflected in the attached Affidavit of Sanjay Bhoir, a member of Defendant's Information Technology team, are February 25, 2011 and February 28, 2011, *prior* to the date Plaintiff alleges that she informed the company that she was pregnant. (Strianese Decl., Ex. 7 ¶¶ 3-4 and Exhs. A & B.)

As set forth in more detail above in Section (iii) of the Substantive Facts Pled in Support of the Challenged Claims, on February 25, 2011, Sanjay Mali, Engagement Manager - Program Management, for the Company, sent an email to human resources professional Elaine Patrao, asking that Plaintiff be terminated. (Strianese Decl., Ex. 7 ¶ 3 and Exh. A.) By February 28, 2011, the termination decision was final and the termination paperwork was being processed. (Strianese Decl., Ex. 7 ¶ 4 and Exh. B.)

This evidence establishes that the decision to terminate Plaintiff's employment was made prior to the date Plaintiff informed the Company that she was pregnant.[12] Accordingly, Defendant

---

[12]     Even if Plaintiff had adequately pled a prima face case of discrimination (which she has not) the February 25, 2011 email satisfies Defendant's burden of production, under the *McDonnell Douglas* burden shifting framework, to articulate a non-discriminatory reason for Plaintiff's termination; namely, poor performance. *See Logan v. Potter*, No. 06-297, 2007 WL 1652268, at *4, n.8 (D.N.J. June 6, 2007) (Hochberg, J.), citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 506, 508-10 (1993) and *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997) ("The employer satisfies its burden of production by introducing evidence which, if taken as true, would permit the conclusion that there was a non-discriminatory reason for the unfavorable employment decision. This burden is 'relatively light.'"). Plaintiff's position was also being relocated to Bangalore, India as part of a corporate restructuring. To survive a motion for summary judgment, Plaintiff must come forth with evidence from which a rational trier of fact could conclude that Defendant's proffered reason is pretextual and that the real reason for the termination is unlawful discrimination. *See Logan*, 2007 WL 1652268 at *4, n.8., citing *Texas Dept. of Cmty. Affairs*, 450 U.S. at 252 and *McDonnell Douglas*, 411 U.S. at 802-804.

could not have made the termination decision for discriminatory reasons.  There is no material issue of fact in dispute here and judgment should be entered in Defendant's favor.[13]

Even without this evidence, the unadorned allegations in the Complaint, devoid of any factual detail, cannot survive a motion to dismiss under *Iqbal* and *Twombly*.  All Plaintiff alleges in the Second Amended Complaint with respect to her termination is that it followed shortly in temporal proximity to the date she informed the Company that she was pregnant.  This does not satisfy the plausibility standard set forth in those cases because, *inter alia*, it pleads conduct "merely *consistent with*" a defendant's liability and  "stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Iqbal*, 129 S. Ct. at 1960.

In *Twombly*, the Court explained that allegations are  merely "consistent with" a defendant's liability, when they are "just as much in line with" rational and lawful conduct as they are with unlawful conduct.  *Twombly*, 550 U.S. at 554.  Such is the situation here.  Plaintiff's sole allegation of pregnancy discrimination in the Complaint, that she was terminated "just one day after she informed Defendant of her pregnancy," is just as much in line with a lawful termination decision made *prior* to the date Plaintiff informed Defendant of her pregnancy as it is to a termination decision made for unlawful reasons.  *Id.*; *see also McGarrey v. Johnson*, No. 11-1123 (FSH), 2011 WL 3859741, at *3 (D.N.J. Aug. 31, 2011) (Hochberg, J.), quoting *Iqbal*, 129 S. Ct. at 1950 ("where the well-pleaded facts do not permit the court to infer more that the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'").  Plaintiff's allegation of temporal proximity is even less plausible when viewed in light of documentary evidence establishing that the termination decision was made prior to that date.

---

[13]       Upon dismissal of Plaintiff's individual claim of pregnancy discrimination, the class action pregnancy discrimination claim must be dismissed as well. *See Wal-Mart v. Dukes*, 131 S. Ct. at 2551.

Plaintiff fails to plead any comments by a decision-maker that would lead to an inference of discrimination. She even fails to plead that Defendant "treated similarly situated persons who are not members of the protected class…more favorably than her." *See Dellapenna*, 2011 WL 5110226, at *4; c*ompare Swierkiewicz v. Sorema*, 534 U.S. 506, 514, 122 S. Ct. 992 (2002) (where the pleadings "detailed the events leading to [the employee's] termination, provided relevant dates, and included the ages and nationalities of at least some of the relevant persons involved with his termination."). Plaintiff merely pleads the date of her hiring, the date she allegedly informed Defendant of her pregnancy, and the date she was terminated and asks the court to speculate as to the rest. The Court should decline this invitation and deem her allegations insufficient. *See Twombly*, 550 U.S. at 555 ("[f]actual allegations must be enough to raise a right to relief above the speculative level."). Plaintiff's allegations are simply not enough to "nudge[] [her] claims of invidious discrimination across the line from conceivable to plausible." *Iqbal*, 129 S. Ct. at 1951. Moreover, as the documentary evidence submitted here establishes, the discovery process would only serve to confirm Plaintiff's inability to establish a prima facie element of her claim.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant Larsen & Toubro Infotech Limited, Inc. requests that this Court enter an order: (i) dismissing the NJLAD class action claims based on sex and pregnancy in the Second Amended Complaint; (ii) dismissing Plaintiff's individual claim of wrongful termination based on pregnancy discrimination under Title VII and NJLAD or, in the alternative, granting summary judgment in favor of Defendant on that claim; and (iii) for any other, further, or different relief as the Court deems just and appropriate.

Dated:  New York, New York
   February 28, 2012

        Respectfully Submitted,

        **BRYAN CAVE LLP**

          /s/ Hope S. Goldstein
        Hope S. Goldstein
        (hsgoldstein@bryancave.com)
        1290 Avenue of the Americas
        New York, New York 10104
        (212) 541-2000
        *Attorneys for Defendants*