**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x

DEEPA SHANBHAG, individually and on behalf of  :
all others similarly situated,  :
 :
                          Plaintiff,  :     Index No. 2:11 cv 06965 (FSH) (PS)
 :
                v.  :
 :
LARSEN & TOURBO INFOTECH LIMITED,  :
INC., LARSEN & TOUBRO LIMITED,  :
 :
                    Defendants.  :
 :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x

**DEFENDANT LARSEN & TOUBRO INFOTECH LIMITED, INC.'S**
**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S**
**MOTION FOR LEAVE TO FILE A THIRD AMENDED COMPLAINT**

BRYAN CAVE LLP
1290 Avenue of the Americas
New York, New York 10104
(212) 541-2000
*Attorneys for Defendants*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ....................................................................................................iii

PRELIMINARY STATEMENT ................................................................................................1

STATEMENT OF FACTS .........................................................................................................2

    Procedural Background ...........................................................................................................2

    The Class Allegations...............................................................................................................5

        (i)       Pregnancy Discrimination (Class).........................................................5

        (ii)     Sex Discrimination (Class)......................................................................5

        (iii)    The Certification .......................................................................................6

    Shanbhag's Individual Pregnancy Discrimination Claim Is Deficient.......................7

    The Third Amended Complaint Contains Impertinent and Inflammatory Allegations............8

    Plaintiff's Improper Public Relations Campaign ...............................................................9

ARGUMENT.................................................................................................................................10

POINT I - THE APPLICABLE LEGAL STANDARD ........................................................10

POINT II - ALLOWING PLAINTIFF TO PLEAD CLASS ACTION CLAIMS UNDER
    THE NJLAD WOULD BE FUTILE .....................................................................11

    A.     Plaintiff Cannot Maintain A Class Action On Behalf Of Employees Who Did
           Not Work In New Jersey..................................................................................12

    B.     Plaintiff's Cannot Maintain A Class Action On Behalf Of All "Past" and
           "Future" Female Employees.............................................................................13

    C.     Plaintiff Cannot Bring Claims On Behalf Of Independent Contractors ...................14

    D.     Plaintiff's Class Allegations of Pregnancy Discrimination Do Not Meet The
           Applicable Pleading Standard ..........................................................................14

    E.     Plaintiff's Class Allegations of Sex Discrimination Do Not Meet The Applicable
           Pleading Standard ..............................................................................................15

    F.     Plaintiff's Class Allegations of Hostile Work Environment Do Not Meet The
           Applicable Pleading Standard ..........................................................................16

POINT III - THE CLASS CLAIMS COULD NOT BE CERTIFIED .............................17

    A.     The Third Amended Complaint And The Certification Evidence That Joinder
           Would Not Be Impractical.................................................................................17

    B.     The Third Amended Complaint Evidences  There Is No Commonality ...................18

POINT IV - THE THIRD AMENDED COMPLAINT IS BROUGHT IN BAD FAITH
    AND FOR DILATORY REASONS........................................................................19

A.    Plaintiff's Failure To Include Pai In The Prior Complaints Establishes That
      Leave Is Sought For Dilatory Reasons .................................................................................. 19

B.    Plaintiff's Press Statements Establish That Amendment Is Sought In Bad Faith ...... 20

C.    Plaintiff's Irrelevant and False Allegations Of Criminal Conduct Establish That
      The Amendment Is Being Sought In Bad Faith ................................................................. 21

D.    The $100 Million In Damages Sought Establishes That The Amendment Is
      Being Sought In Bad Faith ..................................................................................................... 22

POINT V - SHANBHAG'S PREGNANCY DISCRIMINATION CLAIM CANNOT
      SURVIVE ................................................................................................................................... 22

CONCLUSION ......................................................................................................................................... 25

# TABLE OF AUTHORITIES

## FEDERAL CASES

PAGE(S)

*Agostino v. Quest Diagnostics, Inc.*, No. 04-4362, 2010 WL 5392688 (D.N.J. Dec. 22, 2010) ...................13

*In re Alpharma Inc. Secs. Litig.*, 372 F.3d 137 (3d Cir. 2004) ...............................................11

*Alphonso v. Pitney Bowes, Inc.*, 356 F. Supp. 2d 442 (D.N.J. 2005) ........................................22

*Ashcroft v. Iqbal*, 556 U.S. 662 (2007) ..........................................................................11

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..........................................11, 12, 15, 16

*Butz v. Lawns Unlimited Ltd.*, 568 F. Supp. 2d 468  (D. Del. 2008) .......................................10

*Carey v. Federal Exp. Corp.*, No. Civ. 10-2155 (FSH)(PS), 2011 WL 4708065
  (D.N.J. Oct. 4, 2011) ...........................................................................................22

*Carmon v. Norfolk S. Railway Co., No. Civ. A. 03-5959*, 2005 U.S.Dist. LEXIS 37675
  (E.D. Pa. Dec. 22, 2005) .......................................................................................16

*Clark v. McDonald's Corp.*, 213 F.R.D. 198 (D.N.J. 2003) ...............................................17

*Dellapenna v. Tredyffrin/Easttown Sch. Dist.*, No. 11-1394, 2011 WL 5110226
  (3d Cir. Oct. 28, 2011) .....................................................................................23, 25

*Doe v. Allentown Sch. District*, No. 06-cv-1926, 2009 U.S. Dist. LEXIS 19418
  (E.D. Pa. Mar. 2, 2009) .......................................................................................11

*Foman v. Davis*, 371 U.S. 178 (1962) ..........................................................................11

*Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107 (3d Cir. 2004) ....................................11, 19

*General Telegraph Co. of Sw. v. Falcon*, 457 U.S. 147 (1982) ............................................17

*Geraci v. Moody-Tottrup, Int'l, Inc.*, 82 F.3d 578 (3d Cir. 1996) .....................................23

*Green v. Green Mountain Coffee Roasters, Inc.*, No. Civ. A. 11-2067, 2011 WL 6372617
  (D.N.J. Dec. 20, 2011) .......................................................................................17

*Hicks v. Mulhallan*, No. Civ. A. 07-1065 (SDW), 2008 WL 1995143 (D.N.J. May 5, 2008) ...............14

*Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289 (3d Cir. 1988) ...............................11

*Kresefky v. Panasonic Comm'ns. & Sys. Co.*, 169 F.R.D. 54 (D.N.J. 1996)....................................................16

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) ............................................................................22

*McCafferty v. Thermo Fisher Scientific*, No. Civ. A. 11-1146 (JLL), 2011 WL 3443838
    (D.N.J. Aug. 5, 2011) .............................................................................................................................12

*Ogunbayo v. Hertz Corp.*,
    No. Civ. 11-4209 (WJM), 2011 WL 6328222 (D.N.J. Dec. 16, 2011).................................................12

*Pukowsky v. Caruso*, 312 N.J. Super. 171, 711 A.2d. 398 (1998) ...............................................................14

*Seibert v. Quest Diagnostics Inc. et al.*, No. Civ. 11-304 (KSH), 2012 WL 1044308
    (D.N.J. Mar. 28, 2012) ...........................................................................................................................13

*Shan Indus., LLC v. Tyco Int'l, Inc.*, No. 04-1018 (HAA), 2005 U.S. Dist. LEXIS 37983
    (D.N.J. Sept. 12, 2005) ...........................................................................................................................11

*Stewart v. Abraham*, 275 F.3d 220 (3d Cir. 2001) ......................................................................................17

*Suarez v. Prudential Ins. Co. of Am.*, No. Civ.11-1796 (FSH)(PS), 2011 WL 6339781
    (D.N.J. Dec. 19, 2011) ...........................................................................................................................12

*Terminiello v. New Jersey Motor Vehicle Comm'n*, No. 11-3359 Civ., 2011 WL 6826128
    (D.N.J Dec. 27, 2011)..............................................................................................................................12

*United States v. Nobel Learning Cmtys., Inc., No. Civ. A. 09-1818*, 2010 U.S. Dist. LEXIS 27688
    (E.D. Pa. Mar. 19, 2010) ........................................................................................................................11

*Wal-mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ...................................................................18, 19, 24

*Witherspoon v. Rent-A-Ctr., Inc.*, 173 F. Supp. 2d 239 (D.N.J. 2001)............................................11, 20, 24

## STATE CASES

*Buccilli v. Timby, Brown & Timby*, 283 N.J. Super. 6, 660 A.2d 1261
(N.J. Super. App. Div. 1995) ...........................................................................................................................12

*D'Agostino v. Johnson & Johnson, Inc.*, 133 N.J. 516, 628 A.2d 305 (1993).................................................12

*Montells v. Haynes*, 133 N.J. 282, 627 A.2d 654 (1993)...............................................................................13

*Pukowsky v. Caruso*, 312 N.J. Super. 171, 711 A.2d 398 (N.J. Super. App. Div. 1998) ...........................14

**FEDERAL STATUTES**

Fed. R. Civ. P. 11 ........................................................................................................................22

Fed. R. Civ. P. 12(b)(6) ..............................................................................................................11

Fed. R. Civ. P. 12(f) ...................................................................................................................21

Fed. R. Civ. P. 15 .........................................................................................................................3

Fed. R. Civ. P. 15(a)(2) ..............................................................................................................10

Fed. R. Civ. P. 56 ........................................................................................................................23

**MISCELLANEOUS**

3 James WM. Moore et al., Moore's Federal Practice ¶¶ 15.08, 15.10 (2d ed. 1948)............................19

## PRELIMINARY STATEMENT

This Memorandum of Law is submitted on behalf of Defendant Larsen & Toubro Infotech Limited, Inc. ("L&T Infotech" or "Defendant") in opposition to the motion ("Motion") of Plaintiff, Deepa Shanbhag ("Shanbhag" or "Plaintiff"), to amend the Complaint in this action for the third time and to add a proposed Plaintiff, Nanda Pai ("Pai"). Despite now having had four attempts to try and plead her claims, the proposed Third Amended Complaint is still legally and factually deficient. Moreover, Plaintiff is seeking to file the Third Amended Complaint in bad faith and for dilatory reasons. Accordingly, leave to file the Third Amended Complaint should be denied.

The Third Amended Complaint purports to set forth a class action on behalf of all of Defendants' female employees in the United States. However, Plaintiff's class action claims are brought only under the New Jersey Law Against Discrimination ("NJLAD"), which does not apply to employees who work outside of the state of New Jersey.

Plaintiff also does not set forth factual allegations on behalf of the purported class sufficient to plead prima facie class claims or to show that class claims are plausible. Plaintiff does not plead the existence of a policy or practice that impacted women *as a class*. Instead, Plaintiff recites a few sporadic comments and events allegedly directed toward Plaintiff, Pai and, at most, two others out of a class of allegedly over 1500 women, representing only .002% of the proposed class.

In addition, it is clear from the Third Amended Complaint, as well as from a certification that Defendant was required to provide pursuant to this Court's Scheduling Order ("Certification") and referenced by Plaintiff in her Motion, that the class claims attempted to be set forth could not be certified as a matter of law. As the Certification makes clear, Defendant terminated only nine female employees total, across all its operations in the entire United States, during the class period. In addition, Defendant is aware of only 13 female employees who were pregnant during the class period across all of its operations in the entire United States. Thus, even if employees not resident

1

in New Jersey could sue under the NJLAD, which they cannot, Plaintiff still could not come close to establishing the requisite numerosity or other elements of Rule 23 certification.

Leave to file the Third Amended Complaint should be also denied because Plaintiff's counsel's press statements, made in violation of Court rules, show that Plaintiff is moving for leave in bad faith and for dilatory reasons.  The Third Amended Complaint needlessly includes highly inflammatory statements about a supposed "massive immigration fraud" allegedly committed by Defendants.  It also alleges, in a manner wholly irrelevant to this employment discrimination case, that Defendants made "perjurious statements" to the United States Government.  Certain allegations contained in the Third Amended Complaint were promptly repeated by Plaintiff's counsel in the press, apparently as a way to prejudice the potential jury pool and try to force Defendants into an *in terrorem* settlement of Plaintiff's meritless claims.  Indeed, it is apparent that this Third Amended Complaint seeking "$100 million," a wholly insupportable damages number included in bad faith, was filed to further Plaintiff's continuing and improper public relations campaign against Defendant.

It would also be futile to allow Shanbhag to plead individual claims under NJLAD and Title VII for wrongful termination based on pregnancy discrimination.  The undisputed evidence establishes that Defendant was not aware of her pregnancy on the date it made the decision to terminate her employment and the Third Amended Complaint fails to sufficiently plead this claim.

## STATEMENT OF FACTS

### Procedural Background

This action was originally commenced by the filing of a Complaint on November 29, 2011 against Defendant Larsen & Toubro Infotech Limited, LLC, an entity that was not Plaintiff's employer and has no connection to the alleged facts underlying Plaintiff's claims. (Docket No. 1). The original Complaint, which consisted of ten sentences of factual allegations, brought only Shanbhag's individual claims alleging wrongful termination based on pregnancy discrimination.  (*Id*).

On December 15, 2011, Plaintiff filed the First Amended Complaint adding the correct entity, L&T Infotech, but adding no new factual allegations.  (Docket No. 4).

On January 3, 2012, *one day* before L&T Infotech's response to the First Amended Complaint was due, Plaintiff ECF filed, without Court approval, a Second Amended Complaint in contravention of Rule 15 of the Federal Rules of Civil Procedure ("Rule 15"), seeking to turn this case into a class action.  (Docket No. 7).  By Order dated January 10, 2012, Judge Hochberg struck the Second Amended Complaint as improperly filed in contravention of Rule 15.

On January 13, 2012, Plaintiff filed a Motion for leave to Amend the Complaint seeking to add certain claims under Title VII and the NJLAD.  On January 23, 2012, L&T Infotech filed an Opposition to that Motion.  On February 11, 2012, Magistrate Judge Shwartz entered an order[1] ("Order") denying Plaintiff's Motion for leave to file a Second Amended Complaint with respect to certain claims and granting the Motion with respect to other claims.  As the issue had been fully submitted to Judge Hochberg, the Order did not address whether Plaintiff had adequately pled an individual claim of wrongful termination based on pregnancy and, if so, whether Defendant is entitled to summary judgment on that claim.  Following entry of the Order, on February 14, 2012, Judge Hochberg denied L&T Infotech's Motion to Dismiss the First Amended Complaint as moot. (Docket No. 39).  On February 21, 2012, Plaintiff filed her Second Amended Complaint ("SAC"). (Docket No. 21).  Thereafter, both Defendants filed motions to dismiss certain claims in the Second Amended Complaint and for other related relief.  (Docket No. 43).  Those motions were administratively denied by Judge Hochberg pending the outcome of this Motion.  (Docket No. 59).

On March 26, 2012, in compliance with this Court's Scheduling Order (Docket No. 54), Defendant filed a Certification providing information to demonstrate that Plaintiff cannot meet the Rule 23 numerosity requirement for: (i) her sex discrimination class action claims based on wrongful

---

[1]        The Order and supporting Transcript are attached as Strianese Decl., Ex. 1.

termination; and (ii) all of her pregnancy discrimination claims. (Strianese Decl., Ex. 2). During the class period, Defendant terminated only nine female employees, and vendors of Defendant terminated only six female independent contractors, across all operations in the entire United States. In addition, in the class period, Defendant is aware of only 13 female employees and/or independent contractors who were pregnant across all operations in the entire United States. *Id.* As the class action claims are brought solely under the NJLAD, and therefore can permissibly include only *employees* who worked in *New Jersey*, the number of potential class members will ultimately be even less than the numbers set forth in the Certification.

In the Scheduling Order, Plaintiff was directed to review the Certification provided by Defendant and advise the Court whether, based on the information contained in the Certification, she would proceed with the challenged class claims. On April 9, 2012, Plaintiff advised the Court that, despite the information contained in the Certification, she "intends to pursue class claims herein." (Strianese Decl., Ex. 3). This statement was clearly not responsive to the issue the Court focused on in directing the parties to go through the Certification process, which was whether Plaintiff intended to pursue her sex discrimination claim based on wrongful termination and her pregnancy discrimination claim in light of the fact that there will not be a sufficient number of class members for those claims to be certified.

On April 1, 2012, Plaintiff filed the instant Motion seeking to amend her Complaint for the third time. In the Motion, Plaintiff seeks to plead around various arguments made by Defendants in prior motions to dismiss by including additional conclusory statements which Plaintiff attempts to pawn off as "facts." Plaintiff also seeks to avoid the summary judgment aspect of L&T Infotech's prior motions by inexplicably moving up the date she allegedly told Defendant that she was pregnant and stating that it was "obvious" that she was pregnant mere weeks into her pregnancy.

**The Class Allegations**

The class action allegations contained in the Third Amended Complaint are woefully insufficient.  As defined in the Third Amended Complaint, the proposed class consists of "all past, present, and future female employees of L&T infotech and/or L&T in the United States."  In support of this broad and sweeping class action, only the following substantive allegations are pled.

(i)      **Pregnancy Discrimination (Class)**

The substantive (non-conclusory) facts which are arguably pled in support of the class claim of pregnancy discrimination under the NJLAD are:

1. *Shanbhag and Pai*  were allegedly subjected to discriminatory comments and demoted as a result of their pregnancies. (TAC ¶¶ 30, 31, 33, 54, 61, 72).

2. When a woman returned from maternity leave, she was given less work, and Defendants' manager/supervisor told Shanbhag that that woman was "unfit to carry out certain tasks now that she's had a baby."  (TAC ¶ 90).

Thus, the Third Amended Complaint alleges that Shanbhag and Pai *and at most one other woman* have allegations relating to pregnancy discrimination. There are no *factual* allegations of a company-wide practice or policy of mistreating pregnant women or any allegations explaining *how* an entire class of pregnant women was allegedly subjected to discrimination.[2]

(ii)     **Sex Discrimination (Class)**

The substantive (non-conclusory) facts pled in support of the class claim of sex discrimination under the NJLAD are:

1. *Ms. Shanbhag* was allegedly subjected to discriminatory comments and terminated as a result of her sex.  (TAC ¶¶ 87, 88, 91, 92).

---

[2]      There is one entirely conclusory allegation contained in paragraph 93 of the Third Amended Complaint that Defendants had a "pattern and practice" of demoting women or assigning them less desirable work following a pregnancy.

2. Defendants openly Decl.ared their hostility to women employees with derogatory names such as "gossip mongers."  (TAC ¶ 87).

3.  On one occasion, Defendants described a woman in management as having obtained that position "because the locals made her sit on their head." (TAC ¶ 89).

4.  Another female, who complained about sexual harassment from her supervisor was told not to come to work too early or too late and to "avoid being alone with" her harasser. Defendants' Human Resources personnel also told that woman employee to avoid "being alone at your workstation."  (TAC ¶ 90).

Here again, the Complaint alleges that only Shanbhag[3]  and at most *two other women*, out of "about 1500 class members," .002% of the purported class, have allegations relating to sex discrimination.  No woman other than Shanbhag and Pai is alleged to have been subjected to an adverse employment action as a result of her sex.  There are no factual allegations of a company-wide practice or policy of mistreating women because of their sex.  In fact, with respect to over 1496 women, the Court is impermissibly asked to assume allegations of discrimination based on sex and infer that, because Shanbhag and Pai allege they were subjected to sporadic comments, it is plausible that over 1496 other women were also discriminated against.

**(iii)**     **The Certification**

Pursuant to this Court's Scheduling Order, Defendant filed a Certification on March 26, 2012, setting forth the number of female employees potentially implicated by: (i) Plaintiff's class action pregnancy claims; and (ii) Plaintiff's class action sex discrimination claims based on wrongful termination.  (Strianese Decl., Ex. 2).   During the class period, Defendant is aware of only 13 female employees and zero independent contractors total, across all of its operations in the United

---

[3]       Pai's allegations appear to be centered entirely on discrimination she was allegedly subjected to as a result of her pregnancy.

States, who were pregnant.  *Id.*  During the class period, only nine female employees and six female independent contractors total, across all of its operations in the United States, were terminated. Under the Scheduling Order, Plaintiff was required to review the Certification and advise the Court whether she would proceed on those class action claims in light of the Certification.  Apparently seeking to avoid the facts set forth in the Certification, Plaintiff vaguely advised the Court that she "intends to pursue class action claims herein."  (Strianese Decl., Ex. 3).

### Shanbhag's Individual Pregnancy Discrimination Claim Is Deficient

In a desperate and misguided effort to save her individual pregnancy discrimination claim, Shanbhag has changed certain allegations in the Third Amended Complaint to directly conflict with allegations she made in the Second Amended Complaint.  In doing so, she is apparently attempting to plead around the undisputed evidence that establishes that Defendant made the decision to terminate her employment prior to the date Shanbhag told any employee of Defendant she was pregnant.[4]  As Defendant established in both its prior motions to dismiss, the undisputed (and indisputable) evidence establishes that, by March 2, 2011, Defendant had already made the decision to terminate Plaintiff's employment.  This fact is documented in emails of company employees, and the dates of those emails (February 25, 2011 and February 28, 2011) – which have been forensically documented as reflected in the Affidavit of Sanjay Bhoir (originally attached to the Defendant's Motion to Dismiss filed on January 4, 2012 (Docket No. 9) and provided again with this opposition), a member of Defendant's Information Technology team – are *prior* to the date Plaintiff alleges that she informed the company that she was pregnant.  (Strianese Decl., Ex. 4, ¶¶ 3-4 and Exhs. A & B).

---

[4]    In the Third Amended Complaint, Shanbhag strategically moves up the date to March 2, 2011 (TAC ¶ 74) putting this allegation in direct conflict with her allegations in the First and Second Amended Complaints and her statements to the EEOC. In any event, the undisputed evidence establishes that Defendant made the decision to terminate Shanbhag's employment prior to March 2, 2011, rendering her gamesmanship with the dates irrelevant.

On February 25, 2011, Sanjay Mali, Engagement Manager - Program Management, for the

Company, sent an email to human resources professional Elaine Patrao, stating:

> To give you some background, we hired [Plaintiff], as she showed potential, to come
> up as a good BA in SFS domain: At the time of joining, she had only Private Banking
> experience: However, after about 5 months, things have not progressed per our
> expectations: We have provided [Plaintiff] ample opportunities and also regular
> feedback for improvements.  Having come this far, I am unwilling to continue with
> her as Bus. Analyst, for the kind of output which we are getting: today, we expected
> her to be an acknowledged [Subject Matter Expert] in at least 2 Century
> apps/domain, but this has not happened.  Instead, we are required to do lots of
> micro management for her activities and also keep feeding her more than the
> expected knowledge and information to be productive and useful to Century.
>
> *Request that you help us exit her from Century and L&T Infotech* – I have not checked with
> other Account Managers on whether they can use her for any open positions – at the
> same time, I do not want to pass Century problems to other Citi projects. Please let
> me know, the next steps.

(*Id.*, Exh. A (emphasis added).)

By February 28, 2011, the termination decision was final and the termination paperwork was

being processed.  On that date, Human Resources professional Elaine Patrao wrote to another

human resources professional Farida Nallaseth, stating:

> We require a termination letter (signed and scanned) for Deepa Shanbag, ps. no.
> 724693. She is not enrolled in our health plan so the advice on cobra can be omitted.

(*Id.*, Exh. B (emphasis added).)

To try and avoid these undisputed facts, Plaintiff announces, for the first time in the Third

Amended Complaint that, though Plaintiff herself only discovered she was pregnant in "in early

2011," this fact  was "obvious and clearly noticeable" when her employment was terminated *four to*

*eight weeks later.*  (TAC ¶ 72).  This absurd allegation, which was not included in any of Plaintiff's

prior Complaints, represents a transparent effort to avoid Defendant's evidence.

**<u>The Third Amended Complaint Contains Impertinent and Inflammatory Allegations</u>**

The Third Amended Complaint contains irrelevant allegations accusing Defendants of "having

submitted false documents to the United States government,"  engaging in "wide spread visa fraud,"

making "false statements to the United States government under penalties of perjury," "false represent[ations] to the U.S. government," "false certif[ications] to the U.S. government," "providing false information to the U.S. government," "circumventing the H1-B visa quotas under federal law," and engaging in "massive immigration fraud." (TAC ¶¶ 35-46). Shanbhag and Pai are improperly raising the specter of criminal conduct and prosecution in order to gain an advantage in this civil action. The shockingly inappropriate nature of these defamatory allegations[5] is further compounded by Plaintiff's public relations campaign, where her counsel has intentionally highlighted and expanded upon these allegations publicly to harass Defendants and poison the potential jury pool.

Moreover, the Third Amended Complaint seeks damages of "not less than $100 million," a number which was also repeated in the press by Plaintiffs. (TAC ¶ 117(b)). The Second Amended Complaint sought damages of "not less than $20 million." (SAC ¶ 61(b)). The Third Amended includes only one additional Plaintiff, Nanda Pai, and no additional claims for relief. The damages number sought by Plaintiff is put forth in bad faith, a fact which is confirmed by Plaintiff's Initial Disclosures in which she fails to set forth any calculation whatsoever to support even her $20 million damages number. (Strianese Decl., Ex. 5).

**Plaintiff's Improper Public Relations Campaign**

Plaintiff's counsel has made numerous inappropriate statements in the press designed to damage Defendants and poison the jury pool in this case. Shortly after the Second Amended Complaint was filed, press articles began to appear with inappropriate quotes from Plaintiff's counsel. In one article, Plaintiff's counsel was quoted as saying: "Women in the work-place should be treated with respect and dignity. We intend to hold L&T fully accountable under the law for what these women had to suffer." (Strianese Decl., Ex. 6, at 1).

---

[5]     As these allegations were made with malice and repeated to the press outside of the litigation process, they would not be entitled to any privilege in a defamation action.

Following this Court's entry of the Order, Plaintiff's counsel was quoted in an article (for which he apparently provided a picture) as saying: "We are delighted with the Court's decision. Now L&T will have to answer before a jury for its maltreatment of women, and pay these women compensation for what these women had to suffer." (Strianese Decl., Ex. 6, at 2). Plaintiff's counsel continued in that same article: "We want to affect a corporate change. Usually, affected employees don't come forward because they're afraid they will lose their jobs. There is also a certain stigma and hesitation attached to such cases, so we don't expect people to come forward at this stage." *Id.*

In a recent article titled "$100 million Sought as New Discrimination, Immigration Violations Complaint Filed Against L&T," Plaintiff's counsel was quoted as saying: "[Pai] was also aware of a fraudulent scheme of kickbacks that the company was indulging in, where spouses of senior employees were being paid for applications of visas done through them." (Strianese Decl., Ex. 6, at 8). Plaintiff's counsel continued: "What Nanda Pai endured at L&T Infotech is horrible" and he "reiterated the climate of hostility that culminated in Shanbhag's and Pai's unlawful and wrongful termination by defendants on the basis of their sex and pregnancy." *Id.* Notably, the article stated that the Third Amended Complaint, the subject of this Motion, "has been filed to include yet another former female employee of the company," reflecting an assumption that a decision of this Court on whether the Third Amended Complaint may be filed is unnecessary. *Id.* at 6.

## ARGUMENT

### POINT I

### THE APPLICABLE LEGAL STANDARD

While the Federal Rules of Civil Procedure generally provide that leave to file an amended complaint should be freely given "when justice so requires" (Fed. R. Civ. P. 15(a)(2)), it is also true that "[a]mendment . . . is not automatic." *Butz v. Lawns Unlimited Ltd.*, 568 F. Supp. 2d 468, 479 (D. Del. 2008). A district court may exercise its discretion to deny the request "if it is apparent from the

record that: (1) the moving party has demonstrated undue delay, bad faith, or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party." *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 116 (3d Cir. 2004); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962). Here, Plaintiff's request for leave amend the Complaint should be denied as futile and because Plaintiff has demonstrated bad faith and dilatory motives in seeking amendment. *See United States v. Nobel Learning Cmtys., Inc.*, No. Civ. A. 09-1818, 2010 U.S. Dist. LEXIS 27688, at *11-12 (E.D. Pa. Mar. 19, 2010) (denying, on futility grounds, motion to amend); *Witherspoon v. Rent-A-Ctr., Inc.*, 173 F. Supp. 2d 239 (D.N.J. 2001) (denying leave to amend for reasons of bad faith and dilatory motive).

## POINT II

### ALLOWING PLAINTIFF TO PLEAD CLASS ACTION CLAIMS UNDER THE NJLAD WOULD BE FUTILE

"Futility" means that "the complaint, as amended, would fail to state a claim upon which relief could be granted." *Doe v. Allentown Sch. Dist.*, No. 06-cv-1926, 2009 U.S. Dist. LEXIS 19418, at *14 (E.D. Pa. Mar. 2, 2009) (quoting *In re Alpharma Inc. Secs. Litig.*, 372 F.3d 137, 153 (3d Cir. 2004)) (internal quotations omitted); *see also Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir. 1988). Thus, in assessing "futility," the district court applies the same standard of legal sufficiency that applies under Federal Rule of Civil Procedure 12(b)(6). *Shan Indus., LLC v. Tyco Int'l, Inc.*, No. 04-1018 (HAA), 2005 U.S. Dist. LEXIS 37983, at *2 (D.N.J. Sept. 12, 2005).

To survive a motion to dismiss, a complaint must contain sufficient factual allegations, accepted as true, "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. While the plausibility standard is not akin to a probability requirement, a plaintiff

must plead more than the "sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "'[N]aked assertion[s]' devoid of 'further factual enhancement'" do not suffice.[6] *Id.*

In *Twombly*, the Supreme Court made clear that class action claims are subject to the same pleading standard as individual claims. *Twombly*, 550 U.S. at 548. The Court also made clear that conclusory allegations such as that the Defendant engaged in a "conspiracy" or "agreement" or "parallel conduct" are insufficient to survive a motion to dismiss. *Id.* at 554-57; *see also Terminiello v. New Jersey Motor Vehicle Comm'n*, No. 11-3359 Civ., 2011 WL 6826128 (D.N.J Dec. 27, 2011). Instead, what is required is "enough *factual matter* (taken as true) to suggest that" the pleader is plausibly entitled to relief on the asserted claims. *Twombly*, 550 U.S. at 556 (emphasis supplied).

## A.    Plaintiff Cannot Maintain A Class Action On Behalf Of Employees Who Did Not Work In New Jersey

Despite only bringing class action claims under the NJLAD, and having multiple opportunities to plead her claims, the Third Amended Complaint still purports to set forth class action claims on behalf of "all past, present, and future employees of L&T Infotech and/or L&T *in the United States."* (TAC ¶ 11) (emphasis supplied). It is well settled that the NJLAD applies only to employees who work at offices or facilities located in the state of New Jersey. *Buccilli v. Timby, Brown & Timby*, 283 N.J. Super. 6, 660 A.2d 1261 (N.J. Super. App. Div. 1995); *D'Agostino v. Johnson & Johnson, Inc.*, 133 N.J. 516, 537-41, 628 A.2d 305, 317-19 (1993). Though the Second Amended Complaint only brings class action claims under the NJLAD, it purports to be brought on behalf of "a class of all past, present, and future female employees of L&T Infotech and/or L&T in the United States." (SAC ¶ 9). This overly broad class cannot be maintained.

---

[6]     Claims brought pursuant to the NJLAD are analyzed under the pleading requirements set down in *Iqbal* and *Twombly*. *Suarez v. Prudential Ins. Co. of Am.*, No. Civ. 11-1796 (FSH)(PS), 2011 WL 6339781 (D.N.J. Dec. 19, 2011); *Ogunbayo v. Hertz Corp.*, No. Civ. 11-4209 (WJM), 2011 WL 6328222 (D.N.J. Dec. 16, 2011); *McCafferty v. Thermo Fisher Scientific*, No. Civ. A. 11-1146 (JLL), 2011 WL 3443838 (D.N.J. Aug. 5, 2011).

This Court reached this very conclusion in *Seibert v. Quest Diagnostics Inc. et al.*[7] as recently as March 28, 2012. *Seibert v. Quest Diagnostics Inc..,* No. Civ. 11-304 (KSH), 2012 WL 1044308 (D.N.J. Mar. 28, 2012) (dismissing a class action claim under the NJLAD which purported to include employees who worked "throughout the country") (Decision and Order of March 28, 2012, attached as Strianese Decl., Ex. 7). In *Seibert*, the Court dismissed a class action complaint on the ground that the purported class definition included employees who worked in jurisdictions other than New Jersey. *Id.* The Court stated: "New Jersey Courts have consistently applied the law of the state of employment to workplace claims, and have therefore only applied the NJLAD if the Plaintiff worked in New Jersey." *Id.* at 7 (collecting cases). As this caselaw makes clear, Plaintiff's class claims as pled are futile.

**B.      Plaintiff's Cannot Maintain A Class Action On
          Behalf Of All "Past" and "Future" Female Employees**

Plaintiff's attempt to bring a class action on behalf of "all past" female employees fails because the statute of limitations for a claim brought under the NJLAD is two years. *Montells v. Haynes*, 133 N.J. 282, 627 A.2d 654 (1993). As a result, her attempt to bring a class action on behalf of "past" employees who ceased employment with Defendant prior to February 21, 2010, the date the Second Amended Complaint was filed, does not state a claim upon which relief can be granted.

Similarly, a class action on behalf of "future" employees cannot be maintained. Defendant's unidentified "future" employees have no damages nor have they been subjected to any allegedly discriminatory conduct. Accordingly, Plaintiff's class action claims on behalf of "past" employees who ceased employment prior to February 21, 2010 and "future" employees cannot survive.

---

[7]        Litigants may cite to unpublished decisions for their persuasive effect. *See Agostino v. Quest Diagnostics, Inc.*, No. 04-4362, 2010 WL 5392688, at *7, n.5 (D.N.J. Dec. 22, 2010).

**C.**     **Plaintiff Cannot Bring Claims On Behalf Of Independent Contractors**

Plaintiff purports to bring class action claims on behalf of all female employees located in the United States "including without limitation those persons ostensibly employed as 'consultants' or 'independent contractors' through non-parties…." (TAC ¶ 11). However, "an independent contractor…is not an 'employee' and therefore, not protected under Title VII or the New Jersey Law Against Discrimination." *Hicks v. Mulhallan*, No. Civ. A. 07-1065 (SDW), 2008 WL 1995143, at *4 (D.N.J. May 5, 2008) (citing *Pukowsky v. Caruso*, 312 N.J. Super. 171, 182-184, 711 A.2d. 398, 404-05 (1998)). Thus, NJLAD claims brought on behalf of "consultants" or "independent contractors" cannot be maintained.

To the extent Plaintiff contends that Defendant's "consultants" or "independent contractors" were actually "employees," she pleads no facts in support of such a contention. Moreover, even if Plaintiff had pled such facts, an analysis of whether a person is an "independent contractor" or "employee" would be too individualized to plausibly support a class action claim. At minimum, there are not facts in the Third Amended Complaint to show that an *entire class* of independent contractors were actually employees under the NJLAD.

**D.**     **Plaintiff's Class Allegations of Pregnancy Discrimination Do Not Meet The Applicable Pleading Standard**

Plaintiff's attempt to bring a class action under the NJLAD "on behalf of a class of all past, present, and future female employees of L&T Infotech" who were "fired or otherwise discriminated against" on the basis of pregnancy should also be dismissed. The Third Amended Complaint identifies only Shanbhag, Pai, and possibly one other woman as having been pregnant during the class period. The Third Amended Complaint does not allege that a single woman, other than Shanbhag and Pai, suffered an adverse employment action as a result of her pregnancy.

The Third Amended Complaint does not contain any facts showing a policy or practice of Defendant that is alleged to have impermissible affected or impacted a class of pregnant women as a

whole.  While Plaintiff states, in conclusory fashion, that Defendant had a "pattern and practice" (TAC ¶ 93) of mistreating pregnant women, her factual support for this conclusion is that when one "woman returned from maternity leave she was given less work, and Defendants' manager/supervisor told Ms. Shanbhag that that woman was 'unfit to carry out certain tasks now that she's had a baby.'"  (TAC ¶ 90).  An allegation concerning a comment allegedly made about *one* woman is insufficient factual matter to plausibly state a pregnancy discrimination claim on behalf of an entire class of pregnant women.

E.    **Plaintiff's Class Allegations of Sex Discrimination Do Not
       Meet The Applicable Pleading Standard**

In the Third Amended Complaint, Plaintiff attempts to bring a class action sex discrimination claim under the NJLAD "on behalf of a class of all past, present, and future female employees of L&T Infotech."  Plaintiff states in conclusory fashion that women were wrongfully "fired or otherwise discriminated against" and that women were somehow treated differently with respect to "compensation" or "job assignment."  (TAC ¶ 23).  By stating that women were "fired or otherwise discriminated against," and that women were discriminated against with respect to "compensation" and "job assignment," Plaintiff is making precisely the type of conclusory allegations the *Twombly* Court stated are insufficient.  *Twombly*, 550 U.S. at 554-57 (allegations that Defendant engaged in a "conspiracy" or "agreement" or "parallel conduct" are insufficient to survive a motion to dismiss).

With respect to current employees of Defendant, Plaintiff alleges no facts showing a pattern, practice, or policy that discriminated against women as a class.  The Third Amended Complaint fails to allege that there was a single other woman employed by Defendant who was terminated for discriminatory reasons.  In fact, they fail to allege that there was a single other woman who was terminated at all.  They also fail to allege anything about the "compensation" or "job assignment" received by women as a class as compared to men.  Plaintiff allegations of sex discrimination consist

of sporadic comments made over a period of *years* to, at most, two woman other than Shanbhag and

Pai, representing .002% of the 1500 women supposedly encompassed in this class action Complaint.

Plaintiff has not pled "enough *factual matter* (taken as true) to suggest that" a class action claim on

behalf of *all* Defendant's female employees is plausible.  *Id.* at 556.

**F.     Plaintiff's Class Allegations of Hostile Work Environment Do Not
         Meet The Applicable Pleading Standard**

A hostile work environment sex and pregnancy discrimination claim brought on behalf of all

"past, present, and future" female employees of defendants, who worked in different departments,

on different projects, for different managers, in different locations across many different states,

cannot not be maintained.  A hostile work environment claim is inherently individual because

whether a working environment is hostile depends upon the facts relative to the individual.  *See, e.g.,*

*Carmon v. Norfolk S. Ry. Co.*, No. Civ. A. 03-5959, 2005 U.S. Dist. LEXIS 37675, at *25 (E.D. Pa.

Dec. 22, 2005) (In a hostile work environment claim, allegations and evidence concerning the

circumstances of *the complainant's* employment are determinative.).  Clearly, "all past, present, and

future" female employees of defendants did not all have a similar enough environment for such a

wide sweeping class to proceed, and Plaintiff sets forth no factual allegations to show that such a

claim would be plausible.  *See Kresefky v. Panasonic Commc'ns. & Sys. Co.*, 169 F.R.D. 54 (D.N.J. 1996).

Even if all female employees' environments were similar, which they were not, the manner in which

those environments were perceived would be different. What one employee finds hostile, another

might not.  What is sufficient to alter the terms and conditions for one might not be sufficient to

alter the terms and conditions for another (much less *all*).  The sweeping class action hostile work

environment claim is not plausible, defies common sense, and cannot be maintained.  *Iqbal*, 556 U.S.

at 679 ("Determining whether a complaint states a plausible claim for relief will…be a context-

specific task that requires the reviewing court to draw on its judicial experience and common

sense.").

## POINT III

### THE CLASS CLAIMS COULD NOT BE CERTIFIED

Prior to a request for class certification, a Court may dismiss or strike class allegations from a complaint at the motion to dismiss stage "in those rare cases where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met." *Green v. Green Mountain Coffee Roasters, Inc.*, No. Civ. A. 11-2067, 2011 WL 6372617, at *7 (D.N.J. Dec. 20, 2011) (citing *Clark v. McDonald's Corp.*, 213 F.R.D. 198, 205, n.3 (D.N.J. 2003) and *General Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982)).  Here, it is clear from the Complaint and Certification that class claims could not be certified in this Action.

**A.    The Third Amended Complaint And The Certification Evidence
That Joinder Would Not Be Impractical**

Generally, a class must contain at least 40 members in order to be so numerous that joinder would be impractical.  *See Stewart v. Abraham*, 275 F.3d 220 (3d Cir. 2001).  While the Third Amended Complaint purports to assert claims on behalf of all "past, present, and future" female employees of Defendant, there no more than six[8] female employees mentioned in the Third Amended Complaint in total.

Pursuant to this Court's Scheduling Order, Defendant filed a Certification on March 26, 2012, setting forth the number of female employees potentially implicated by: (i) Plaintiff's class action pregnancy claims; and (ii) Plaintiff's class action sex discrimination claims based on wrongful; termination.  (Strianese Decl., Ex. 2).   During the class period, Defendant is aware of only 13 female employees and zero independent contractors total, across all of its operations in the United

---

[8]    We suspect that there are even fewer than six employees mentioned in the Third Amended Complaint and that Plaintiff has repeatedly referred to the same one or two employees as "a woman," rather than referring to them by name, to try to create the impression that the Third Amended Complaint sets forth allegations concerning more women than it actually references.  In any event, the maximum number of females mentioned is only, at most, six.

States,[9] who were pregnant.  *Id.*  Only nine female employees and six female independent contractors total, across all of its operations in the United States, were terminated.  *Id.*  As the Certification demonstrates, there are far fewer than 40 employees implicated by Plaintiff's NJLAD pregnancy discrimination class action claims and her sex discrimination class action claim based on termination.  It is clear at this juncture that those claims cannot be certified and Plaintiff is not pursuing those claims in good faith. Defendant should not be put through the burden of costly discovery on claims for which there are clearly an insufficient number of potential plaintiffs.  Accordingly, leave to plead class action pregnancy discrimination claims and class action sex discrimination claims based on termination should be denied.

**B.     The Third Amended Complaint Evidences
        There Is No Commonality**

The Third Amended Complaint evidences that there are insufficient allegations of commonalty.  In the *Wal-mart Stores, Inc. v. Dukes*, as here, the plaintiffs did not allege that Defendant had "any express corporate policy" that was discriminatory.  131 S. Ct. 2541*, 2548 (2011).  But the *Wal-mart* plaintiffs at least alleged that "their local managers' discretion over pay and promotions is exercised disproportionately in favor of men."  *Id.*  That type of allegation, describing *how* the class discrimination against all of Defendant's female employees is alleged to have occurred, is absent here.  Unlike the plaintiffs in *Wal-mart*, this Plaintiff does not plead facts to show the existence of a "uniform corporate culture" or a "practice" or any other facts explaining how the alleged class discrimination occurred with respect to *all* female employees.  *Id.*  Plaintiff's alleged class claims are not based upon a "common contention – for example, the assertion of discriminatory bias on the part of the same supervisor."  *Id.*

---

[9]      As discussed in Section II.A, *supra*, only employees who worked in New Jersey can bring claims under the NJLAD, so the number of potential class members is fewer than the numbers set forth in the Certification.

Plaintiff sets forth no facts to show, or even from which it could be inferred, that there is a common contention that the claimed class members suffered an injury in the same way, *e.g.*, from the same practice or policy.[10]  In other words, "without some glue holding the alleged *reasons* for all" of the "[Defendant's] decisions together, it will be impossible to say that examination of all the class members' claims for relief will produce a common answer to the crucial question…."  *Id.* at 2552 (emphasis in original).  As it is lacking this "glue," Plaintiff's complaint is defective.

**POINT IV**

**THE THIRD AMENDED COMPLAINT IS BROUGHT IN BAD FAITH AND FOR DILATORY REASONS**

The decision to grant leave to file an amended complaint is in the sound discretion of the district court, and leave may be denied where it is being sought in bad faith, for dilatory reasons, or where previous amendments have failed to cure a Complaint's deficiencies.  *See* 3 James WM. Moore et al., Moore's Federal Practice ¶¶ 15.08, 15.10 (2d ed. 1948).  Plaintiff has had two prior opportunities to amend, and the allegations set forth are still deficient and include an overly broad and unsupportable class, rendering denial appropriate here.  *See Fraser*, 352 F.3d at 110 (upholding denial of leave to file a third amended complaint).

**A.      Plaintiff's Failure To Include Pai In The Prior Complaints Establishes That Leave Is Sought For Dilatory Reasons**

There are numerous allegations in the Second Amended Complaint which, it is now apparent, relate to Pai.  (*Compare* SAC ¶¶ 36, 37 with TAC ¶¶ 33, 61).  Despite this fact, Plaintiff failed to include Pai as a Plaintiff in the Second Amended Complaint.  Now, in this proposed Third Amended Complaint, Plaintiff seeks to include Pai in an effort to cure certain deficiencies that Shanbhag has as lead Plaintiff, and transform this action into a platform for Plaintiff to announce,

---

[10]      Even the two named Plaintiffs plead in the Third Amended Complaint that they had different managers, worked for Defendants at different times, and were allegedly discriminated against in entirely different ways.

falsely and publicly (and mere days after a mediation failed), that Defendants' committed "massive immigration fraud" and "perjurious statements to the U.S. Government." These allegations of immigration and labor law violations are so needlessly inflammatory and constitute such a "significant augmentation and overhaul" to this case, that the Court should conclude that the amendment is sought in bad faith. *Witherspoon*, 173 F. Supp. 2d at 244.

In the Motion, Plaintiff offers no explanation for why Pai was not included in the original Complaint or the first two times it was amended. The Motion also does not explain why Ms. Pai waited nearly two years to bring her claims. Similarly, the Motion does not explain why Ms. Shanbhag's original ten sentence Complaint (Docket No. 1) has expanded to include sexual harassment and other allegations Ms. Shanbhag was, according to all of her Complaints, aware of while she was employed by Defendant. The Motion does not explain why Shanbhag is pleading allegations in the Third Amended Complaint that directly conflict with allegations in the Second Amended Complaint. As the Motion offers no explanation of the reasons the Court should permit amendment, leave to file the Third Amended Complaint should be denied.

**B.** **Plaintiff's Press Statements Establish That Amendment Is Sought In Bad Faith**

Local Civil Rule 105.1 states that a lawyer representing a party in a civil matter may not make a statement to the press in a matter triable to a jury where a reasonable person would know "or reasonably should know that it will have a substantial likelihood of causing material prejudice to an adjudicative proceeding." Included as impermissible statements are those that relate to the "character, credibility, or reputation, or criminal record of a party or witness." *Id*.

Here, Plaintiff's counsel has made repeated press statements that: Plaintiff intends "to hold L&T fully accountable under the law for what these women had to suffer;" "L&T will have to answer before a jury for its maltreatment of women, and pay these women compensation for what these women had to suffer;" and "What Nanda Pai endured at L&T Infotech is horrible." (Strianese

Decl., Ex. 6, at 1, 2, 8).  Perhaps most troublingly, Plaintiff's counsel was quoted as saying: "[Pai] was also aware of a fraudulent scheme of kickbacks that the company was indulging in, where spouses of senior employees were being paid for applications of visas done through them." (Strianese Decl., Ex. 6, at 8).  These extrajudicial statements, which were aimed at the "character, credibility, reputation, or criminal record" of Defendants' senior executives, some of whose testimony and credibility could be critical in the defense of this Action, were highly inappropriate, prejudice Defendants by poisoning the potential jury pool, and evidence bad faith warranting denial of leave to file the Third Amended Complaint.

C.     **Plaintiff's Irrelevant and False Allegations Of Criminal Conduct**
       **Establish That The Amendment Is Being Sought In Bad Faith**

The proposed Third Amended Complaint contains irrelevant allegations accusing Defendants of "having submitted false documents to the United States government,"  engaging in "wide spread visa fraud," "made false statements to the United States government under penalties of perjury," made "false represent[ations] to the U.S. government," made "false certif[ications] to the U.S. government," "providing false information to the U.S. government," "circumventing the H1-B visa quotas under federal law," and engaging in "massive immigration fraud."  (TAC ¶¶ 35-46). These allegations, which are irrelevant to this *employment discrimination* Action, were apparently included to harass Defendants and further Plaintiff's improper press campaign.  Tellingly, one press article in which Plaintiff's counsel is quoted is entitled "$100 Million Sought as New Discrimination, *Immigration Violations Complaint* Filed Against L&T."  (Strianese Decl., Ex. 6, at 6) (emphasis supplied).  As these allegations were apparently included to support the improper press campaign and raise the specter of criminal sanction to achieve a tactical advantage in litigation, the Court should deny Plaintiff's Motion.  *See* Fed. R. Civ. P. 12(f) (allowing a Court to strike allegations in a pleading that are "redundant, immaterial, impertinent, or scandalous").

**D.     The $100 Million In Damages Sought**
        <u>Establishes That The Amendment Is Being Sought In Bad Faith</u>

An attorney filing a Complaint certifies both that the factual contentions and damages claims

are filed in good faith and supportable by fact and law.  *See* Fed. R. Civ. P. R. 11.  In fact, Courts have

imposed sanctions where a plaintiff has pursued "inflated damages claim[s]" that were insufficiently

supported.  *Alphonso v. Pitney Bowes, Inc.*, 356 F. Supp. 2d 442 (D.N.J. 2005).  Plaintiff's request for $100

million in damages in the Third Amended Complaint is sought in bad faith, is completely

unsupportable, and bears no relationship to the potential universe of damages at issue in this case.

The Second Amended Complaint sought damages of $20 million.  (SAC ¶61(b)).  Though

Plaintiff was required to provide a "computation of each category of damages claimed" in the

Second Amended Complaint, she completely failed to do so for the claimed $20 million in damages.

*Id.*  As Plaintiff was unable to set forth a Rule 26(a) calculation for $20 million, a Third Amended

Complaint adding one proposed Plaintiff  (but no additional claims) cannot, in good faith, set forth

a $100 million damages claim.  Ms. Pai,  the only new proposed Plaintiff, alleges that she was earning

a salary of $44,000 per year.  (TAC ¶ 25).  There is no rational assessment of her claims that could

result in a potential damages figure at or near $80 million.  Rather, Plaintiff has apparently plucked

the $100 million figure from thin air, presumably as a way to gain further press coverage of the

Action.  (Strianese Decl., Ex. 6, at 8).

## POINT V

## <u>SHANBHAG'S PREGNANCY DISCRIMINATION CLAIM CANNOT SURVIVE</u>

Plaintiff has not alleged direct evidence of discrimination; therefore, a burden shifting

analysis applies to Plaintiff's individual claim of pregnancy discrimination.  *Carey v. Federal Exp. Corp.*,

No. Civ. 10-2155 (FSH)(PS), 2011 WL 4708065, at *2 (D.N.J. Oct. 4, 2011) (Hochberg, J.) (citing

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).  To establish a prima facie case of

discrimination under the federal and state laws at issue here, a plaintiff must show that she: (i) is a

member of a protected class; (ii) was qualified for the position; (iii) suffered an adverse employment

action; and (iv) was discharged "under conditions that give rise to an inference of unlawful

discrimination." *Geraci v. Moody-Tottrup, Int'l, Inc.*, 82 F.3d 578, 580 (3d Cir. 1996). The Third Circuit

has explicitly held that an employer's knowledge of a plaintiff's status in a protected category is a

critical part of a prima facie case. In *Geraci*, the Court stated:

> The traditional *McDonnell Douglas-Burdine* presumption quite properly makes no
> reference to the employer's knowledge of membership in a protected class because,
> in the vast majority of discrimination cases, the plaintiff's membership is either
> patent (race or gender), or is documented on the employee's personnel record (age).
> This case, however, is different. We cannot presume that an employer most likely
> practiced unlawful discrimination when it did not know that the plaintiff even
> belonged to the protected class. *The employer's knowledge, in this class of cases, is a critical
> element of the plaintiff's prima facie case.* Indeed, it is counter-intuitive to infer that the
> employer discriminated on the basis of a condition of which it was wholly ignorant,
> and in this situation the bare *McDonnell Douglas* presumption no longer makes sense.
>
> Pregnancy, of course, is different in that its obviousness varies, both temporally and
> as between different affected individuals. It is difficult to imagine than an employer
> would not be aware that an employee is in the later stages of her pregnancy, at least if
> the employer sees the employee….If the pregnancy is not apparent and the employee
> has not disclosed it to her employer, she must allege knowledge and present, as part
> of her prima facie case, evidence from which a rational jury could infer that the
> employer knew that she was pregnant.

*Id* at 581 (emphasis added).

Plaintiff Shanbhag should be denied leave to file an individual claim of pregnancy

discrimination on the ground of futility because Defendant was not aware of her pregnancy on the

date it made the decision to terminate her employment.[11] In the Third Amended Complaint,

Plaintiff pleads the precise date that she first informed Defendant she was pregnant: March 2,

---

[11]     Defendant requested in its motions to dismiss that if the Court determined that Plaintiff had adequately pled an
individual claim for pregnancy discrimination, the Court convert Defendant's motion into one for summary judgment
under Fed. R. Civ. P. 12(d) and grant it summary judgment pursuant to Fed. R. Civ. P. 56. Under Fed. R. Civ. P. 56,  a
party is entitled to summary judgment if it "shows that there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *Dellapenna v. Tredyffrin/Easttown Sch. Dist.*, No. 11-
1394, 2011 WL 5110226, at *3 (3d Cir. Oct. 28, 2011).

2011.[12]  The undisputed (and indisputable) evidence establishes that, by that date, the Defendant had already made the decision to terminate Plaintiff's employment.  This fact is documented in emails exchanged between company employees, the dates of which have been forensically documented as reflected in the attached Affidavit of Sanjay Bhoir, a member of Defendant's Information Technology team.  (Strianese Decl., Ex. 4 ¶¶ 3-4 and Exhs. A & B.)

As set forth in more detail in the Statement of Facts, *supra* at 7-8, on February 25, 2011, Sanjay Mali, Engagement Manager - Program Management, for the Company, sent an email to human resources professional Elaine Patrao, asking that Plaintiff be terminated.  (Strianese Decl., Ex. 4 ¶ 3 and Exh. A.)  By February 28, 2011, the termination decision was final and the termination paperwork was being processed.  (Strianese Decl., Ex. 4 ¶ 4 and Exh. B.)  Accordingly, Defendant could not have made the termination decision for discriminatory reasons.  There is no material issue of fact in dispute here and judgment should be entered in Defendant's favor.[13]

Now that Plaintiff knows that Defendant has this evidence, she tries to save this claim in the Third Amended Complaint by alleging that her pregnancy was "obvious"  and "clearly noticeable" prior to March 2, 2011.  (TAC ¶ 72).  These allegations were not contained in either the First or Second Amended Complaints and are nothing but a transparent attempt to "plead around" the undisputed evidence presented by Defendant. Given that Plaintiff has chosen to include this allegation for the first time in the proposed Third Amended Complaint, "the Court would have no choice but to conclude that the failure to include such allegations originally amounted to bad faith and that the amendment would unduly prejudice Defendant, or worse yet, that the allegations were fabricated from whole cloth." *Witherspoon*, 173 F. Supp. 2d at 244.

---

[12]    In the Second Amended Complaint, Plaintiff pled that she informed Defendants on March 3, 2011.  (SAC ¶ 27.)

[13]    Upon dismissal of Plaintiff's individual claim of pregnancy discrimination, the class action pregnancy discrimination claim must be dismissed as well. *See Wal-Mart*, 131 S. Ct. at 2551.

Indeed, Plaintiff pleads that she only discovered her pregnancy in "early 2011." (TAC ¶ 72). Given this allegation, it is not plausible, and does not comport with "common sense," that her pregnancy was "obvious" on March 4, 2011. *Iqbal, 556 U.S.* at 663. Moreover, Plaintiff has put forth no *evidence* of this fact, which she must do in opposition to a motion for summary judgment. *Dellapenna v. Tredyffrin/Easttown Sch. Dist.*, No. 11-1394, 2011 WL 5110226, at *3 (3d Cir. Oct. 28, 2011) (to defeat summary judgment, Plaintiff must show something more than "the mere existence of a scintilla of evidence" for the elements of her prima facie case). Plaintiff cannot establish a prima facie case of pregnancy discrimination because Defendant did not have knowledge of Plaintiff's pregnancy at the time the decision to terminate her employment was made, therefore, the Court should not permit Plaintiff to amend her Complaint and should dismiss Plaintiff's pregnancy discrimination claim.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant respectfully requests that the Court enter an Order denying Plaintiff leave to file the Third Amended Complaint.

Dated: April 26, 2012       Respectfully Submitted,

BRYAN CAVE LLP

   s/Hope S. Goldstein
Hope S. Goldstein  (hsgoldstein@bryancave.com)
Christopher Strianese
(christopher.strianese@bryancave.com)
1290 Avenue of the Americas
New York, NY 10104
(212) 541-2000
*Attorneys for Defendants*