

Hope S. Goldstein
Direct: 212-541-1168
Fax: 212-541-1403
hsgoldstein@bryancave.com

December 19, 2012

Hon. Madeline C. Arleo
United States Magistrate Judge
U.S. District Courthouse
50 Walnut Street
Room 2050
Newark, NJ 07101

Re:   Shanbhag/Pai v. Larsen & Toubro Infotech Limited, Inc. et al.
      2:11-cv-06965 (KM)(PS)

Dear Judge Arleo:

Pursuant to the Court's December 7, 2012 Order (Docket No. 190), Defendants submit this pre-conference letter to advise the Court as to the status of the case, the Defendants' settlement position, and related matters.

<u>Background</u>

This action was originally filed by Plaintiff Deepa Shanbhag ("Shanbhag"), a former employee of Defendant Larsen & Toubro Infotech Limited Inc. ("Defendant"). Shanbhag's initial Complaint, alleging pregnancy discrimination, contained a mere ten sentences of alleged facts. (Docket No. 1). Defendants promptly moved to dismiss the Complaint on the ground that it failed to state a cause of action under Fed. R. Civ. P. 12(b)(6), and also moved for summary judgment on the ground that Defendant has documentary evidence proving that it made the decision to terminate Shanbhag's employment a number of weeks prior to learning of her pregnancy. (Docket No. 9).

After Defendant advised Shanbhag's counsel of the grounds for the motion and initial settlement negotiations reached an impasse, Plaintiff Shanbhag apparently thought that "all past, present, and future" women employees of Defendant and its parent company were also discriminated against, and filed a Second Amended Complaint alleging a myriad of class action claims. (Docket No. 43). Needless to say, Shanbhag had never mentioned "class wide" discrimination in her EEOC Charge or anywhere else prior to this filing. As a result, Magistrate Judge Shwartz ruled that the class claims could only be asserted under the New Jersey Law Against Discrimination

Bryan Cave LLP
1290 Avenue of the Americas
New York, NY 10104-3300
Tel (212) 541-2000
Fax (212) 541-4630
www.bryancave.com

**Bryan Cave Offices**
Atlanta
Boulder
Charlotte
Chicago
Colorado Springs
Dallas
Denver
Frankfurt
Hamburg
Hong Kong
Irvine
Jefferson City
Kansas City
London
Los Angeles
New York
Paris
Phoenix
San Francisco
Shanghai
Singapore
St. Louis
Washington, DC

**Bryan Cave
International Consulting**
A TRADE AND CUSTOMS CONSULTANCY

www.bryancaveconsulting.com
Bangkok
Beijing
Jakarta
Kuala Lumpur
Manila
Shanghai
Singapore
Tokyo

Bryan Cave LLP

Hon. Madeline Arleo
December 19, 2012
Page 2

("NJLAD"), not Title VII, because there had been no exhaustion of administrative remedies with respect to the class claims.[1] (Docket No. 38).

Following Shanbhag's filing of the Second Amended Complaint, Defendants again moved for dismissal and summary judgment. (Docket No. 43). In response, Plaintiffs filed a Third Amended Complaint (Docket No. 99) removing many of the class action claims that had been brought in the Second Amended Complaint. However, the Third Amended Complaint added Plaintiff Nanda Pai ("Pai"), along with outrageous allegations accusing Defendants of "immigration fraud," "perjury," criminal conduct in dealing with the U.S. government, which accusations have nothing to do with this *employment discrimination* action. The Third Amended Complaint also contained an improper demand for $100 million which, as a specific *ad damnum* clause, was violative of Local Civil Rule 8.1.[2]

After the filing of the Second and Third Amended Complaints Plaintiffs, through their counsel, promptly went public and obtained extensive press coverage for their sensationalized allegations in an effort to damage Defendants' business and reputation.[3] In fact, Defendants opposed the filing of the Third Amended Complaint (and have now moved to strike portions of the Third Amended Complaint) on the grounds, among others, that it contains outrageous allegations, was being utilized as a springboard to gain press coverage in violation of the Local Civil Rules of this Court (Loc. Civ. R. 105.1), and because it was clear from the pleadings that Shanbhag had "made up wholecloth" new allegations to try and plead around Defendants' summary judgment evidence. (*see*, Docket Nos. 79, 102, 105). Almost immediately after Defendants raised Plaintiffs' bad faith and violations of the Local Civil Rules, Plaintiffs' first local counsel, Trisha Connors, Esq., filed a motion to withdraw, citing "disagreement regarding the best strategic and tactical ways to prosecute this action" and an inability to carry out the responsibilities of local counsel as required by the Local Civil Rules. (Docket No. 88 at ¶9).

Judge Shwartz, while noting that the Court "will not tolerate conduct that violates its rules, including Fed. R. Civ. P. 11 and L. Civ. R. 105.1," permitted the filing of the Third Amended Complaint because "barring the claim because of counsel statements to the press without evidence that Plaintiff even knew about it, would penalize Plaintiff for her counsel's conduct, and thereby visit the alleged sins of the lawyer on the client." May 15, 2012 Transcript pgs. 29-30. Judge Shwartz further held that "going forward, plaintiff must be consulted before counsel speaks to the press, and counsel is reminded they are bound by the local rules of this Court, and non-compliance may lead to among other things, sanctions and revocation of pro hac vice status." *Id.* at pg. 31. As to Defendants' legal challenges to the filing of Third Amended Complaint and improper allegations of "immigration

---

[1] Despite this ruling, Plaintiffs continue to insist that their NJLAD claims are brought on behalf of a class of "nationwide" employees, despite well-settled law that only New Jersey employees may sue under the NJLAD. *See* Docket No. 104.

[2] Plaintiffs have now, in the face of Defendants Rule 12(f) Motion, withdrawn the *ad damnum* clause.

[3] Discovery has now revealed over 50 communications Plaintiff's counsel had with members of the press for the purposes of encouraging the press to report on the outrageous allegations contained in the Third Amended Complaint.

Bryan Cave LLP

fraud," Judge Shwartz held that those challenges were more appropriately addressed in motions to dismiss and strike once the Third Amended Complaint had been filed. *Id.* Those motions have now been fully briefed and are currently pending before the Court. (Docket Nos. 101-111).

The Remaining Class Action Claims Are Meritless

In the Third Amended Complaint, only two class action claims were brought: (i) a claim under the NJLAD for hostile work environment; and (ii) a claim under the NJLAD that women had been discriminated against in connection with their compensation. Though Plaintiffs' claim that "all" women were subjected to a hostile work environment, they specifically plead, and their interrogatory responses identify, only a few discriminatory or derogatory comments allegedly made to them and one or two other women, hardly a sufficient basis to continue to prosecute this as a class action claim. Even if the hostile work environment claim survives a Rule 12(b)(6) motion, it is extremely unlikely to be certified because hostile work environment is a uniquely individualized claim, not capable of meeting the "commonality" and "typicality" requirements. *See Kresefky v. Panasonic Commc'ns & Sys. Co.*, 196 F.R.D. 54 (D.N.J. 1996).

Defendants have also moved to dismiss the class action compensation claims under Fed. R. Civ. P. 12(b)(6) for failure to plead, in non-conclusory fashion, the existence of other women who were allegedly discriminated against in their compensation. Moreover, despite the utterly conclusory (and demonstrably false) allegation in the Third Amended Complaint that *all* female employees were paid less, Plaintiffs interrogatory responses stated only that "in partial response to this interrogatory, *Ms. Shanbhag* identifies Mr. Sandip Soni who, despite being junior to Ms. Shanbhag and with less experience, was paid $55.00 hours while Ms. Shanbhag was paid $22.00 per hour." Plaintiffs identified no other instances where women were paid less than similarly situated men. Clearly, *Ms. Shanbhag's* contention that *she* was paid less is insufficient to support the class action claim.

Plaintiffs also complained in their interrogatory responses, notwithstanding their Rule 11 obligation to have a good faith basis to assert the class compensation claim, that information concerning others' compensation was "currently in the exclusive possession of Defendants." Defendants produced the compensation information on or about September 28, 2012. The compensation information shows no meaningful difference between the compensation of men and women.

The Individual Claims Are Meritless

Plaintiff Shanbhag will not prevail on her individual claims. Documentary evidence establishes that Shanbhag, *along with a number male employees*, was terminated as part of a restructuring and that Shanbhag was included in the restructuring because her performance was objectively poor. Moreover, Defendants can prove that they made the decision to terminate Shanbhag's employment weeks prior to the date that Shanbhag informed Defendants of her pregnancy.

Pai will be similarly unsuccessful. Documentary evidence establishes that Pai had performance problems and that she was given a number of opportunities to correct them. For example, Pai was

Hon. Madeline Arleo
December 19, 2012
Page 4

Bryan Cave LLP

put on a Performance Improvement Plan prior to her termination and was repeatedly counseled by Human Resources employees. Even if Pai could prevail, she will not be able to recover substantial damages. Pai has admitted, in writing, that she did not even attempt to mitigate her damages for almost a year and, far from being emotionally distressed as she now claims, actually "enjoyed" her time off from work. Thus, Pai cannot recover front pay or back pay damages and, at best, could only recover "garden variety" emotional distress damages.

The Potential For Defendants' Recovery of Fees And Costs And The Current Motion To Withdraw

The NJLAD is a "prevailing party" statute, which permits defendants to recover their costs and attorneys' fees in the event it is determined that a plaintiff prosecuted the action in bad faith.[4] *Michael v. Robert Wood Johnson University Hospital*, 398 N.J. Super 159, 940 A.D.2d 310 (N.J.Super.A.D. 2008). In addition, Plaintiffs and their counsel remain subject to Rule 11 and 28 U.S.C. §1927.

Here, either as a result of Defendants' pending motions to dismiss, or upon submitting the full evidentiary picture to the Court, we have little doubt that the Court could conclude that the Plaintiffs here proceeded with this action in bad faith (or actual malice) and that the claims were brought with insufficient basis. For example, the Court could find that the unsupported class action claims – raised for the first time *after* Plaintiff was aware of Defendants' documentary evidence refuting her individual claims – were prosecuted in bad faith. The Court could further find that the allegations of "immigration fraud," "perjury," "self-dealing," and other criminal conduct on the part of Defendants were included out of malice to damage Defendants' business through the improper press campaign.

Tellingly, Finkelstein & Partners, LLP, local counsel in this action, has now filed a Motion to withdraw. The firm is the *second* local counsel to seek withdrawal by referencing an inability to comply with the local rules and duties of local counsel. According to Finkelstein & Partners' Motion, the local rules "require withdrawal" because of the potential for "personal liability for sanctions under 28 U.S.C. §1927 and Fed. R. Civ. P. 11 and 37" and the firm cannot be "liable for Plaintiffs' actions or filings, or for the conduct and filings of Plaintiffs' lead counsel Mr. Chittur as required by Rule 101.1(c)." Motion to Withdraw at 3. An award of attorneys' fees and costs would be particularly appropriate here because Plaintiffs, with the knowledge that *two* sets of local counsel filed motions to withdraw citing disagreements with the manner in which the Plaintiffs are pursing their claims, chose to proceed.

The Settlement Negotiations and Agreement

The settlement negotiations that culminated in a settlement agreement between the Defendants and Pai were described at length in Defendants' letter seeking permission to file a motion to enforce the settlement agreement. (Docket No. 183). In brief, Pai agreed to dismiss the action with prejudice in return for Defendants agreement to permit dismissal "without costs and attorneys fees" and waiver of

---

[4] Of course, in the event the settlement agreement (discussed below) is enforced, Defendants would not and could not seek fees and costs from Pai.

Hon. Madeline Arleo
December 19, 2012
Page 5

Bryan Cave LLP

any argument that they are entitled to attorneys' fees from Pai either because she had engaged in frivolous litigation, made allegations in bad faith, wished to dismiss the case after costing Defendants hundreds of thousands of dollars in attorneys' fees, or for any other reason. The agreement, which was indisputably reached, did not exclude any terms, and was the result of an offer made by Pai, is clearly enforceable. *LNT Merchandising Co. v. Dyson, Inc.*, No. 08-2883(SRC), 2009 WL 2169236, *2 (D.N.J. Jul. 21, 2009) ("New Jersey … will enforce an oral settlement agreement provided that it has the basic contract formation elements of offer and acceptance of sufficiently definite essential terms, or in other words, mutual assent to the same terms (a 'meeting of the minds')") (citing *Pascarella v. Bruck*, 190 N.J.Super. 118, 124–25, 462 A.2d 186 (App.Div.1983)).

Prior to reaching the agreement with Pai, Defendants had been prepared to offer Pai the sum of $35,000 in return for a dismissal of the action with prejudice *and* a full general release. As part of this offer, Defendants were also prepared to agree to pay a negotiated amount to Pai's attorneys so that the $35,000 would be net dollars for her (other than required taxes and withholding). As discussed above, Pai has already admitted, in writing, that she did not mitigate her damages for almost a year and "enjoyed" her time off from work following her termination. Accordingly, Pai cannot recovery back pay or front pay damages, and will likely be unable to recover damages for emotional distress. At best, Pai may have a claim for "garden variety" emotional distress, which would not be substantial. *See Abrams v. Lightoiler, Inc.*, 841 F.Supp.584, 593 (D.N.J. 1994) (remitting $100,000 emotional distress award to $2,5000 because, absent compelling circumstances, emotional distress damages are generally "nominal.") Therefore, it is Defendants' position that $35,000 net of attorneys' fees represents greater than full value recovery for Pai.[5] It is our understanding that Pai rejected this offer in favor of the agreement she ultimately reached with Defendants because she did not want to provide Defendants with a general release.

As to Plaintiff Shanbhag, the Defendants have offered $35,000 (also net of negotiated attorneys' fees), in return for a dismissal of the action and a full general release. While we have indicated to Plaintiffs' counsel that the $35,000 offer does not represent the "last dollar," any settlement would need to have a relationship with Shanbhag's potential damages and her chance of success in the action. Based on the tone and tenor of the negotiations, we are optimistic that Shanbhag's claims can be settled once the settlement agreement between Pai and Defendants is enforced.

Very truly yours,

/s/ Hope S. Goldstein

Hope S. Goldstein
Christopher R. Strianese

---

[5] Should the action continue, the Court could award Defendants prevailing party attorneys' fees and costs should it find that Pai continued the action after being presented with the opportunity for "full satisfaction of all her claims." *See Michael v. Robert Wood Johnson University Hospital*, 398 N.J. Super 159, 940 A.D.2d 310 (N.J.Super.A.D. 2008).